HENRY THOMAS BUCHANAN *v.* STATE OF INDIANA.

[No. 2-874A190. Filed November 5, 1975. Rehearing denied December 1, 1975. Transfer denied June 1, 1976.]

*Harriette Bailey Conn, (Mrs.)*, Public Defender of Indiana, *Eugene C. Hollander,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley Wilson,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Pursuant to Indiana Rules of Procedure for Post-Conviction Remedies, Rule 2, Henry Thomas Buchanan belatedly appeals his second degree burglary convic-

tion.[1] Buchanan asserts error as follows: (1) admission of certain physical evidence and testimony despite the failure of the prosecution to comply with a pre-trial discovery order; (2) that the verdict and corresponding judgment were not sustained by sufficient evidence; and (3) giving two State's instructions.

We affirm.

The facts viewed most favorably to the State reveal that at approximately 2:15 A.M. on the morning of October 14, 1972, Officer Doug Hall, of the Hartford City Police Department, in the company of two fellow officers, observed Buchanan crouched inside a Goodyear Tire and Rubber Company store. Hall testified that he exited his patrol car, ran to the front window and demanded that Buchanan stop and raise his hands. At that time Buchanan bolted from the showroom into the garage area of the building and attempted to escape through a hole in a closed overhead door. Hall quickly ran around the north side of the building where he and a fellow officer apprehended Buchanan as he attempted to flee.

An examination of the premises revealed that a number of televisions and other appliances had been removed from their shelves and placed near the overhead door. Furthermore, a door leading from the garage area into a showroom was found broken and pieces of plexiglass scattered nearby. The officers also recovered a "shop towel" outside the building and a paper towel inside the building, near the broken plexiglass, both of which were stained with blood. While in custody, the police provided Buchanan with a towel in order to stop the bleeding from a cut on his hand. At trial, the shop towel, the paper towel and the police-provided towel, all containing human blood, Type B, were admitted into evidence.

---

1. IC 1971, 35-13-4-4(b), Ind. Ann. Stat. § 10-701(b) (Burns Supp. 1975).

## PROSECUTION'S FAILURE TO COMPLY WITH PRE-TRIAL DISCOVERY ORDER WAIVED BY DEFENDANT

Defendant first contends that the trial court committed reversible error by allowing the prosecution to call certain witnesses and present certain physical evidence after the State failed to provide such list of witnesses and to afford the defense an opportunity to examine such physical evidence as ordered by the Court in response to defendant's motion to produce. Said motion, filed June 6, 1973, reads as follows:

"Comes now Robert J. Barry, Attorney for the defendant, and moves the Court for an order as follows:

1. To require the Prosecuting Attorney to produce all statements of witnesses that have been made to any law enforcement agency of the State of Indiana and/or Blackford County, including the Prosecuting Attorney of Blackford County, Indiana.

2. To require the Presocuting Attorney to turn over to defendant's attorney the names and addresses of all witnesses which the State of Indiana intends to, and will rely on, in the prosecution of said cause.

3. To require the Prosecuting Attorney to furnish a list of any pictures, items of personal property or other physical evidence that he intends to offer in evidence in this cause; and that defendant's attorney be given an opportunity to inspect such physical evidence.

4. To require the Prosecuting Attorney to furnish to defendant's attorney for inspection and copy all reports of work performed by the Indiana State Police Laboratory, and/or any other laboratory on behalf of the State of Indiana in connection with this cause, whether or not the Prosecuting Attorney intends to offer the same in evidence in this cause."

While the trial court might have appropriately denied Buchanan's Motion to Produce in light of the general and unspecific nature of the Motion (see Dillard v. State [1971], 257 Ind. 282, 292, 274 N.E.2d 387, 392-393), the fact remains that on June 6, 1973, the court granted such Motion and or-

dered the prosecution to produce the requested list of witnesses and to permit examination of the physical evidence within twenty days. Our consideration of the issue therefore must be directed toward the asserted failure of the prosecution to honor such production order.

At trial, out of the hearing of the jury, defense counsel objected to the admission of any such evidence, categorically denying receipt of a list of witnesses or any opportunity to examine the physical evidence. Conversely, the prosecuting attorney categorically stated that defendant's first attorney, who withdrew prior to trial, had been provided with the written list, and that defendant's present trial attorney had received such list orally. Furthermore, the prosecuting attorney stated that he had provided defense counsel an opportunity to view the physical evidence prior to trial, but that defense attorney never attempted to avail himself of the opportunity.

The trial court, in considering the defense objection to the testimony of witnesses not contained on a written list provided by the prosecution, indicated that it felt that the oral recitation of prospective witnesses given to counsel was substantial compliance with that portion of the discovery order. The court nevertheless directed the prosecutor to provide a written list of witnesses and to permit examination of physical evidence by the defense and offered the defendant a continuance for that purpose. The defendant expressly refused to utilize the opportunity of the continuance offered. Defense counsel did so asserting that a mid-trial continuance would alienate the jury against the defendant. While such assertion may have a degree of merit if the jury were of the thought that the continuance had been sought or granted for the convenience or necessity of the defendant's trial preparation, such mental impression was not shown to have been probable in this case.

It has been generally held that a continuance is the appropriate remedy for failure of the prosecution to comply with a discovery order. *Pinkerton* v. *State* (1972), 258 Ind. 610, 283 N.E.2d 376; *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738; *Marine* v. *State* (1973), 158 Ind. App. 72, 301 N.E.2d 778.

Buchanan, however, relies upon *Johns* v. *State* (1968), 251 Ind. 172, 180, 240 N.E.2d 60, 65, in which a continuance was held not always a sufficient remedy for prosecutorial noncompliance:

> "There is no doubt that appellant, by failing to move for a continuance when the witnesses were called, failed to pursue his proper remedy. However, this Court cannot, and should not, look with equanimity upon a blatant disregard of a court's order by the State in a criminal proceeding, particularly where the defendant's life is at stake. Had the State, prior to trial, sought a rehearing on defendant's motion, or made a good showing of inability to comply with the order, it would not now be in a position of having deliberately disobeyed the order of the trial court. We agree with appellant's counsel in their argument that it is fundamentally a denial of due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States to lead a defendant to believe that he has been afforded the right of discovery, and then permit the State of Indiana, in violation of an order of court, to present, during its case in chief surprise witnesses whose testimony substantially added to the weight of the State's case."

We are not, as in the *Johns* case, confronted with a "blatant disregard of a court's [discovery] order". Nor, as was the case in *Johns,* did the prosecution offer crucial testimony from surprise witnesses after misleading defendant to believe that full discovery had been afforded.

Be that as it may, not only did Buchanan here refuse a mid-trial continuance, the record reflects that defense counsel wrote a letter to the prosecutor on July 9, 1973 advising that the discovery order had not been honored. This was some

three months prior to trial. Yet defendant proceeded to trial on October 3, 1973 without objection, without seeking enforcement of the discovery order and without a request for a pretrial continuance.

In *Dillard* v. *State, supra,* 257 Ind. at 295, 274 N.E.2d at 394, the Supreme Court treated the question of waiver for failure to seek enforcement of a discovery order as follows:

> "When a defendant in a criminal case obtains a favorable ruling from a trial court on a discovery motion and the defendant thinks the appellee has not complied with the order, the defendant must call this to the attention of the trial court in some manner and attempt to compel the prosecution to comply with the order. Appellant took no such action in this case and has therefore waived any error resulting from the non-compliance by the appellee." *See also Merry* v. *State* (1975), 166 Ind. App. 199, 335 N.E.2d 249; *Rickard* v. *State* (1973), 155 Ind. App. 189, 291 N.E. 2d 916.

Although the prosecution did, according to the evidence, at least in part, fail to comply with the discovery order, defendant did not seek protective relief until the trial had commenced and jeopardy had attached. We hold that under such circumstances, a defendant may not be permitted to avoid the consequences of an otherwise fair trial.

## EVIDENCE OVERWHELMINGLY SUPPORTS SECOND DEGREE BURGLARY CONVICTION

It is Buchanan's position concerning sufficiency of the evidence that notwithstanding the evidence hereinbefore recited, the jury should have believed his own version of the facts. Buchanan testified that he was merely walking down the alley behind the Goodyear Tire store, became frightened and hid behind some tires which were stored outside the building; that such tires obscured vision of the door so that the police could not have seen anyone effect an escape in that manner; that his hand was not bleeding until after he had

been placed in custody and the police squeezed an old cut on his finger to obtain a blood sample. Buchanan also attributes some significance to the lack of evidence of fingerprints on the items inside the store which had been moved or disturbed.

Suffice it to say that the jury believed the testimony of the police officers as opposed to Buchanan's evidence and that we will not reweigh the conflicts in that evidence. The evidence was overwhelmingly supportive of the jury's conclusion that Buchanan did, in fact, break and enter the business establishment with intent to commit a felony. *Giles* v. *State* (1974), 162 Ind. App. 639, 320 N.E.2d 806; *Gorbett* v. *State* (1974), 162 Ind. App. 164, 318 N.E. 2d 592.

## INSTRUCTIONS CONCERNING CIRCUMSTANTIAL EVIDENCE NOT MISLEADING OR IN CONFLICT

Buchanan objected to the following instruction concerning circumstantial evidence:

> "Instruction No. 10. The Court instructs the Jury that any fact necessary to be proven in this case may be proven by direct evidence or circumstantial evidence or both. You are instructed that circumstantial evidence is to be regarded by the Jury in all cases if you believe it to be true when it is thorough and satisfactory. The jury should so consider it, neither enlarging or belittling its force. It should have its just and fair weight with the Jury, and, if and when it is taken as a whole and fairly and carefully weighed, it convinces the guarded judgment beyond a reasonable doubt, the Jury should act upon such conviction."

He asserts that this instruction, when read together with Instruction No. 11, is misleading, claiming that the two instructions exact different standards of scrutiny for the assessment of circumstantial evidence.

Instruction No. 11 reads as follows:

> "The Jury is instructed that evidence may be either direct or circumstantial. Direct evidence is evidence of a particular

fact or circumstance which form a subject of judicial investigation. Circumstantial evidence is evidence of other or collateral facts and circumstances from which the particular fact which forms the subject of judicial investigation is or may be inferred to justify the conviction of the defendant. In any case upon circumstantial evidence alone, the circumstances disclosed by the evidence must be of such character and strength as to exclude every reasonable hypothesis except that of the defendant's guilt. If the circumstances disclosed by the evidence can be explained on any reasonable hypothesis except the defendant's guilt, if the circumstances disclosed by the evidence can be explained on any reasonable theory consistent with the defendant's innocence, he is entitled to an acquittal, but circumstantial evidence alone is enough to support a verdict of guilty of any crime provided the Jury believe beyond a reasonable doubt from the evidence given in the case that the defendant is guilty as charged. The proof must not only coincide with the hypothesis of guilt, but it must be inconsistent with every other rational conclusion. No greater degree of certainty is required where the evidence is circumstantial than where it is direct, for, in either case, the Jury must be convinced beyond a reasonable doubt of the defendant's guilt as charged."

Instruction 10 advises the jury that circumstantial evidence, like direct evidence, may be believed if it is "thorough and satisfactory", and that if such evidence convinces of guilt beyond reasonable doubt, conviction is proper. Instruction 11 elaborates upon and complements Instruction 10. Thus, the "believeability" of circumstantial evidence is inextricably entwined with its sufficiency to exclude every reasonable hypothesis of innocence[2] and to thus convince of guilt beyond reasonable doubt. We find no inconsistency between the two instructions nor any tendency to mislead. To the contrary, we find that the combined effect of the two instructions fully and accurately apprised the jury concerning consideration of circumstantial evidence.

2. The "exclusion of every reasonable hypothesis of innocence" is the proper gauge for the trier of fact to use in assessing the weight and character of evidence though it is not the appropriate test for an appellate review. McAfee v. State (1973), 259 Ind. 687, 291 N.E.2d 554.

## IMPROPRIETY IN GIVING INSTRUCTION WHICH STATED THAT "BY EACH ACQUITTAL OF A CRIMINAL, THE SAFEGUARDS ERECTED BY SOCIETY FOR ITS PROTECTION ARE WEAKENED" WAS RENDERED HARMLESS IN VIEW OF OVERWHELMING EVIDENCE OF GUILT

The trial court gave the following instruction to the jury:

"The issues in this case are important both to the defendant and to the community. The accused, if he is not guilty, ought not to be erroneously convicted, and, on the other hand, if he be guilty, he ought not to be erroneously acquitted. *In consideration of the rights of the defendant, do not forget that by each acquittal of a criminal, the safeguards erected by society for its protection are weakened.* But you should also remember that the liberty of a defendant is one of his highest and most sacred rights and can only be forfeited by him upon the causes and upon the conditions and in the manner prescribed by law herein. If the evidence fails to produce in the minds of each and every Juror the conviction of the guilt of the defendant beyond a reasonable doubt of the offense charged or of some lesser offense included therein, then he should not be convicted merely because of the severity of the offense charged; and, on the other hand, if the evidence in this cause does produce in the minds of each member of the Jury the conviction of the defendant's guilt as charged beyond a reasonable doubt, then the severity of the punishment which the law imposes would be no reason for the erroneous acquittal of the defendant." (Emphasis supplied)

Buchanan contends that such instruction prejudicially and erroneously places undue emphasis upon the social aspects of a possible acquittal thereby diminishing the importance of the only issue for resolution—the guilt of the accused.

A careful reading of the instruction indicates an effort to place before the jury countervailing legal and social considerations. In *Stout* v. *State* (1883), 90 Ind. 1, 13, the following portion of an almost identical instruction was approved:

"In considering his rights do not forget that by each acquittal of a *guilty* criminal the safeguard erected for society for its protection is weakened." (Emphasis supplied)

The sole material, though subtle difference, was the presence of the word "guilty" before the word "criminal" in the *Stout* instruction.

Some years later, an instruction arguably less of a trumpet call to conviction than the instruction here is alleged to be, was criticized. In *Partlow* v. *State* (1922), 191 Ind. 657, 663, 128 N.E. 436, 437, the societal policy consideration was viewed as sound but was stated to have "no proper place in an instruction by the court". The *Partlow* instruction read insofar as pertinent:

> "Any other construction of the law would weaken the safeguards erected by society for its protection; for, by the non-enforcement of law and its penalties, in all criminal cases where it is shown by the evidence to have been violated, contempt for law is bred among the very class it is intended to restrain."

More recently, however, instructions of the *Partlow* type have been approved. *See Holliday* v. *State* (1970), 254 Ind. 85, 89-90, 257 N.E.2d 679, 682, and cases therein cited.

Notwithstanding the apparent shift in judicial attitude between the time of the *Partlow* and *Holliday* decisions toward "law and order" instructions, we are unable to approve the particular instruction before us, in the light of the evidence in this case.

Buchanan, testifying in his own defense, admitted a prior felony conviction. He might thus be properly considered a "criminal" even though innocent of the charge then in issue. In this context, the instruction challenged tends to encourage the conviction of defendants for past misdeeds. We must agree, therefore that the instruction in question was improper.

In view, however, of the overwhelming evidence of guilt in this cause, we fail to see that the jury could have been misled by the erroneous instruction.

Judgment affirmed.

Buchanan, J., concurs; White, J., dissents with opinion.

## DISSENTING OPINION

WHITE, J.—Repeatedly we have held that "it is not the function of this court to determine the weight and credibility of the evidence",[1] yet without so doing, how can the majority determine that the evidence of Buchanan's guilt is so overwhelming that the jury could not have been misled by the erroneous instruction?

Since I prefer to follow our well established rule, I would reverse and remand for a new trial.

NOTE.—Reported at 336 N.E.2d 654.

---

1. *Summers* v. *State* (1972), 153 Ind. App. 22, 27, 287 N.E.2d 260. In that same volume 153 of our official reports there are a total of twenty opinions in criminal appeals, sixteen, or over fifty percent, of those opinions state this same rule.