**Warner C. JACKSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A04–9405–CR–205.**

Court of Appeals of Indiana.

Oct. 30, 1995.

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, for Appellant.

Pamela Carter, Attorney General of Indiana, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellant–Defendant, Warner Jackson ("Jackson") appeals his conviction for Robbery While Armed with a Deadly Weapon, a class B felony. We affirm.

### Issues

Jackson presents three issues for our review which we restate as follows:

I. Whether the State presented sufficient evidence;

II. Whether final instructions number 1, number 2, and number 9 violated Article I, § 19 of the Indiana Constitution; and

III. Whether the final instruction defining "reasonable doubt" in terms of "moral certainty" violated Jackson's due process rights.

### Facts and Procedural History

The facts most favorable to the conviction indicate that Christine Davis ("Davis") and her fourteen-year-old daughter, Khristine, returned to their home on the evening of August 21, 1993. Khristine entered the kitchen by herself. While she was in the kitchen, a man walked up behind her, held a knife to her side, and told her that he did not intend to harm her, but just wanted money. In response, Khristine led the man through the house and toward the staircase where Davis' purse had been placed.

At that point, Davis noticed the armed man following her daughter, shouted at the man, and reached for the blade of his knife. A struggle ensued, during which Davis' purse was knocked from the stairway to the floor. The man, who had repeated to Davis that he only wanted money, let go of the knife, and reached for the purse. Davis broke free, took the knife, and ran from the house, hoping the man would follow. When she did not see the man exit her house, Davis returned to her home, and discovered both the man and her purse were missing. Her purse contained, among other things, her Sears Department Store credit card.

Five days later, Jackson was apprehended at a Sears store when he attempted to make a purchase using Davis' Sears card. After Jackson's arrest, both Davis and Khristine selected Jackson as the robber from a police-prepared photo-array. On August 28, 1993, Jackson's sister appeared at Davis' house, and stated that she wanted to return Davis' driver's license and several of her credit cards. The sister explained that she had found these items in one of her brother's drawers.

At his jury trial, Jackson admitted he had attempted to use Davis' card, but claimed that he found it in an alley. In contrast to her earlier explanation to Davis, Jackson's sister testified that some children had found Davis' belongings outside her home. The jury found Jackson guilty as charged. He received a twenty-year presumptive sentence for the Robbery While Armed with a Deadly Weapon charge in addition to a thirteen-year sentence due to a Habitual Offender determination.

### Discussion and Decision

#### I. Sufficiency of the Evidence

■ Jackson contends that the evidence presented fails to support his conviction for Robbery While Armed with a Deadly Weapon. He stresses that Davis was outside holding the knife when her purse was physically taken from inside her home. Therefore, he argues, because he did not have the knife in his hand at the exact moment the purse was seized, he cannot be convicted of armed robbery.

■ Our standard of review on a claim that the evidence was insufficient is well established. *Baran v. State* (1994), Ind., 639 N.E.2d 642, 646. This court neither reweighs the evidence nor judges the credibility of the witnesses. *Id.* We consider only the evidence most favorable to supporting the verdict. *Id.* If there is substantial evidence of probative value to support the conclusion that the defendant is guilty beyond a reasonable doubt, we affirm the conviction. *Id.* at 646–47.

The relevant section of the Indiana Code provides:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear; commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon....

Ind.Code § 35–42–5–1.

Jackson makes an argument similar to one which our supreme court addressed in *Wilburn v. State* (1987), Ind., 515 N.E.2d 1109. In *Wilburn*, the defendant raped the victim at knife-point, put the knife away, grabbed the victim's purse, and ran. The defendant argued that because there was no evidence he was armed at the time the purse was taken, there was insufficient evidence to convict him for Robbery While Armed with a Deadly Weapon. *Id.* at 1110. In rejecting this argument, our supreme court explained:

> The victim's testimony clearly established that appellant was armed with a knife at the time of the rape. The fact that he put the knife away shortly before he grabbed her purse and ran does not gainsay that fact that the robbery was an armed robbery. The jury was justified in determining that a Class B felony, Robbery, had been committed as defined in Ind.Code § 35–42–5–1.

*Id.*

The evidence most favorable to supporting the verdict shows that Jackson was armed with the knife when he forced Khristine to get some money for him. He was still armed with the knife when he struggled with Davis and informed her he wanted money. The facts that he dropped the knife when he saw Davis' purse get knocked over, and that Davis took the knife outside prior to the exact moment her purse was actually taken, do not preclude a conviction for Armed Robbery. We view the actions Jackson took to commit the robbery as one continuous event. Jackson produced and used the knife as a means of facilitating the commission of the charged offense. That is, his use of the knife was necessary to accomplish the robbery and was thus part of the robbery. Accordingly, Jackson was chargeable for Armed Robbery. Because there was substantial evidence of probative value to support the jury's determination of robbery while armed with a deadly weapon, we decline the invitation to reweigh the evidence.

## II. Final Instructions 1, 2, and 9

Jackson next contends that final instructions 1, 2, and 9 violate Article I, § 19 of the Indiana Constitution. Specifically, he argues that these instructions improperly bound the jury to the trial court's interpretation of the word "presence." Having not objected to any of the instructions at trial, Jackson now characterizes them as fundamental errors in an attempt to stave off waiver of the issue. Fundamental error is a substantial blatant violation of basic principles rendering a trial unfair to the defendant, and which, if not corrected would deny the defendant fundamental due process. *Morgan v. State* (1995), Ind.App., 648 N.E.2d 1164, 1168.

Jury instructions lie largely within the sound discretion of the trial court and are reviewed only for an abuse of discretion. *Tyson v. State* (1993), Ind.App., 619 N.E.2d 276, 293 *trans. denied, denial of post conv. relief aff'd in part, rev'd in part* (1993), Ind. App., 626 N.E.2d 482, *cert. denied by* —— U.S. ——, 114 S.Ct. 1216, 127 L.Ed.2d 562. Where an appellant presents the issue of whether an instruction has been given erroneously, the standard on review is whether the alleged erroneous instruction so affects the entire charge that the jury was misled as to the law in the case. If so, reversal is required. *McCullough v. State* (1993), Ind. App., 608 N.E.2d 1009, 1010. Jury instructions must be considered as a whole; if they state the law fully and correctly when read in conjunction, they are not erroneous. *Id.*

Article I, section 19 of the Indiana Constitution states, "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts." Although Article I, § 19 confers upon juries in criminal cases the right to determine the law, that right has some limitations. *Taylor v. State*

(1987), Ind., 511 N.E.2d 1036, 1040; *Mers v. State* (1986), Ind., 496 N.E.2d 75, 81.

The court's final instruction number 1 reads in relevant part:

Since this is a criminal case the constitution of the State of Indiana makes you the judges of both the law and the facts. Though this means that you are to determine that law for yourselves, it does not mean that you have the right to make, repeal, disregard or ignore the law as it exists. The instructions of the Court are the best source as to the law applicable to this case.

(R. 41).

Our supreme court has already addressed the validity of the language which appeared in final instruction number 1. *Andrews v. State* (1989), Ind., 532 N.E.2d 1159, 1166, *reh. denied; see also Johnson v. State* (1988), Ind., 518 N.E.2d 1073, 1076. The Court specifically approved of the instruction as a correct statement of the law which adequately explains the role of the jury. We are bound by such precedent, and therefore hold that the trial court judge was well within his discretion in presenting final instruction number 1.

Final instruction number 2 reads:

While the constitution of this state makes the jurors the judges of the law as well as the facts, this does not mean that the jurors may willfully and arbitrarily disregard the law.

It means that jurors under their oaths should honestly, justly and impartially judge the law as it exists. It does not mean that jurors may so judge the law in any case so as to make it null and void and of no force, but that they shall so judge the law as to give it a fair and honest interpretation, to the end that the law in each and every case may be fairly and honestly enforced.

Any other interpretation of the law would weaken the safeguards erected by society for its protection; for by the non-enforcement of the law and its penalties in all criminal cases where it is shown by the evidence, beyond a reasonable doubt, to have been violated, contempt for the law is bred among the very class that it is intended to restrain.

The facts must be judged and found by the jury from a careful consideration of all the testimony given by the witnesses in the case, and under your oaths you have no right to arbitrarily disregard either the law or the facts in the case.

(R. 42).

An instruction virtually identical to final instruction number 2 was held to be a proper explanation of the jury's role. *Beavers v. State* (1957), 236 Ind. 549, 141 N.E.2d 118, 120, 121, 125. Seeing no substantive differences between final instruction number 2 and the instruction endorsed in *Beavers,* we hold that the presentation of final instruction number 2 to the jury was not erroneous, nor in violation of the Indiana Constitution. Moreover, we decline Jackson's invitation to disagree with our own supreme court in *Beavers* based upon a viewpoint penned in an 1895 dissent, *Sparf v. United States* (1895), 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (Gray, J., dissenting).

The court's final instruction number 9 reads:

"Presence", within the rule that a taking of property from the presence of another may constitute a robbery, means a possession or control so immediate that violence or intimidation is essential to sunder it. A thing is in the presence of a person, with respect to robbery, which is so within his reach, inspection, observation or control that he could, if not overcome by violence or prevented by fear, retain possession of it.

A taking "from the presence of the victim" may still occur if the force used by the perpetrator is sufficient to cause the victim to flee for his or her own safety and prevents retention of property owned by the victim. The victim's immediate or actual presence at the time of the taking of the property is not required under such circumstances to establish the crime of robbery.

(R. 50).

The definition of "presence" in final instruction number 9 is a correct statement of

the law. *Wash v. State* (1980), Ind.App., 408 N.E.2d 634, 637; *see also Litel v. State* (1988), Ind., 527 N.E.2d 1114, 1115. Having already held that the jury was properly instructed as to their role in relation to determining the law, we hold that it was neither erroneous nor an abuse of discretion for the trial court judge to present final instruction number 9.

### III. Moral Certainty Instruction

■ Finally, Jackson argues that his due process rights were violated by the trial court's final instruction number 14, which defined "reasonable doubt" in terms of moral certainty.

The last instruction in dispute reads:

The burden of proof is upon the State of Indiana to prove the Defendant guilty beyond a reasonable doubt.

A reasonable doubt is such doubt as you may have in your mind when having fairly considered all of the evidence, you do not feel satisfied to a *moral certainty* of the guilt of the defendant. A reasonable doubt is a fair, actual and logical doubt that arises in the mind as an impartial consideration of all the evidence and the circumstances in the case. It is not every doubt, however, that is a reasonable one. You are not warranted in considering as reasonable those doubts that may be merely speculative or products of the imagination, and you may not act upon mere whim, guess or surmise or upon the mere possibility of guilt. A reasonable doubt arises, or exists in the mind, naturally, as a result of the evidence or the lack of evidence. Thee (sic) is nothing in this that is mysterious of (sic) fanciful. It does not contemplate absolute or mathematical certainty. Despite every precaution that may be taken to prevent it, there may be in all matters depending upon human testimony for proof, a mere possibility of error.

If, after considering all of the evidence, you have reached such a firm belief in the guilt of the defendant that you would feel safe to act upon that belief, without hesi-

tation, in a matter of the highest concern and importance to you, then you have reached that degree of certainty which excludes reasonable doubt and authorizes conviction.

This rule on reasonable doubt applies to each of you individually, and it is your personal duty to refuse to convict as long as you have a reasonable doubt as to the defendant's guilt as charged. Likewise, it is your personal duty to vote for conviction as long as you are convinced beyond a reasonable doubt of the defendant's guilt as charged.

(Emphasis added).

(R. 55–56).

We first note that a panel of this court has already examined a case concerning a moral certainty instruction identical to final instruction number 14. *See Winegeart v. State* (1994), Ind.App., 644 N.E.2d 180, *trans. granted.* The holding in that case stated that the instruction's language

carried with it the distinct potential of impermissibly relieving the State of its constitutionally-imposed burden of proof. Thus, because the 'reasonable doubt' instruction in this case failed to present an objective standard by which the jurors were to judge Winegeart's guilt, we find the giving of this instruction denied him his right to due process and, as a result, constituted fundamental error.

*Id.* at 183. Accordingly, Winegeart's burglary conviction was reversed, and a remand for new trial was granted.[1]

In March of 1994, the United States Supreme Court handed down the consolidated cases *Victor v. Nebraska and Sandoval v. California* (1994), 511 U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583, *reh. denied by* —— U.S. ——, 114 S.Ct. 1872, 128 L.Ed.2d 492 (1994) (individually, *"Victor,"* and *"Sandoval"*; collectively, *"Victor/Sandoval"*). *Victor/Sandoval,* which held that two separate "moral certainty" instructions did not violate the respective defendants' due process rights, was not distinguished nor even men-

---

1. Although an opinion has not yet been issued, our supreme court has granted transfer in *Wineg-* *eart.*

tioned in *Winegeart.* In view of the relatively close proximity of time between *Victor*'s publication date and the deliberations regarding *Winegeart,* we presume that the *Winegeart* panel did not have the benefit of *Victor/Sandoval*'s analysis. Because we do have the benefit of the United States Supreme Court's analysis, we must respectfully disagree with *Winegeart,* and hold that final instruction number 14 did not violate Jackson's due process rights. In explaining our reasoning, we believe it is necessary to present a rather detailed review of *Victor/Sandoval.*

As in Jackson's case, the constitutional question at issue in *Victor/Sandoval* was whether there was a reasonable likelihood that a jury understood an instruction to allow conviction based on proof insufficient to meet the beyond-a-reasonable-doubt standard. *Victor/Sandoval,* —— U.S. at ——, 114 S.Ct. at 1243. In examining this question, the United States Supreme Court noted that as long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. *Id.* For instance, the *Sandoval* instruction, which was held to be constitutional, read as follows:

> A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.
>
> Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty,* of the truth of the charge.

*Id.* at ——, 114 S.Ct. at 1244 (emphasis added).

Though noting its concern that the phrase "moral certainty" was antiquated and that, standing alone, the phrase might not be recognized by modern jurors, the high court concluded that it does not necessarily follow that the instruction is unconstitutional. *Id.* at ——, 114 S.Ct. at 1248. The phrase "moral certainty," after all, "cannot be sequestered from its surroundings." So, while the phrase may be ambiguous in the abstract, the rest of the instruction given in Sandoval's case lent content to the phrase. *Id.* Sandoval's jury was directed that reasonable doubt is "that state of the case which, *after the entire comparison and consideration of all of the evidence,* leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." *Id.* Accordingly, "there [was] no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case." *Id.*

The instruction at issue in *Victor* stated:

> The burden is always on the State to prove beyond a reasonable doubt all of the material elements of the crime charged, and this burden never shifts.
>
> "Reasonable doubt" is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, *to a moral certainty,* of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the strong probabilities of the case, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an actual and substantial doubt arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the state, as distin-

guished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

*Id.* at ——, 114 S.Ct. at 1249 (emphasis added).

In response to Victor's moral certainty argument, the high court discussed *Cage v. Louisiana* (1990), 498 U.S. 39, 112 L.Ed.2d 339, 111 S.Ct. 328 (per curiam), the only case in which it held that a definition of reasonable doubt violated the Due Process Clause. *Victor,* —— U.S. at ——, ——, 114 S.Ct. at 1243, 1250. "The moral certainty to which the *Cage* instruction referred was clearly related to the defendant's guilt; the problem in *Cage* was that the rest of the instruction provided insufficient context to lend meaning to the phrase." *Id.* —— U.S. at ——, 114 S.Ct. at 1250. In contrast, the instruction in *Victor* was not similarly deficient. The *Victor* instruction told the jurors, *inter alia,* that they must be convinced "after a full, fair, and impartial consideration of all the evidence" and that they "should be governed solely by the evidence introduced." *Id.* at ——, 114 S.Ct. at 1251. Hence, the high court held that because there was no reasonable likelihood that the jurors understood the reference to moral certainty to allow conviction on a standard insufficient to satisfy the reasonable doubt, or to allow conviction on factors other than the government's proof, the instruction was not unconstitutional. *Id.*

Much like the instructions found to be constitutional in *Victor/Sandoval,* final instruction number 14 provides sufficient context to lend meaning to the phrase "moral certainty." "Moral certainty" as a definition of reasonable doubt, does not stand alone in final instruction number 14, but is fleshed out—perhaps even more than in either *Victor* or *Sandoval.* A reasonable doubt is correctly described as "a fair, actual and logical doubt that arises in the mind" naturally, "as a result of the evidence or the lack of evidence." It is extinguished once a juror has "reached such a firm belief in the guilt of the defendant" that the juror would feel safe to act upon that belief, without hesitation. As in *Victor/Sandoval,* the challenged instruction sufficiently directed the jury as to the required burden. Repeated references to the consideration of the evidence further emphasized the requirement of an evidentiary foundation. Accordingly, there was no reasonable likelihood that Jackson's jury applied final instruction number 14 in an improper or erroneous manner. Hence, Jackson's federal due process claim must fail.[2]

Jackson's state due process claim fails as well, but under a slightly different analysis. As already noted in section II, *supra,* jury instructions must be considered as a whole; if they state the law fully and correctly when read in conjunction, they are not erroneous. *McCullough,* 608 N.E.2d at 1010. Having already determined that final instruction number 14 was not an erroneous definition of reasonable doubt, we cannot now hold that it was an abuse of discretion for the trial court to present it to the jury.

Affirmed.

DARDEN, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

With respect to Issue II, I do not agree with the majority that *Beavers v. State* (1957) 236 Ind. 549, 141 N.E.2d 118, compels our approval of Instruction No. 2. To be sure, the instruction considered in *Beavers* was substantially the same as that before us, but the Supreme Court there, addressed only the aspect of the instruction which told the jury that they were not free to disregard the law. That is the focus of Jackson's attack on Instruction No. 2 here, and for that reason I do not find the giving of the instruction to be reversible error. Nevertheless, for the reasons set forth in *Buchanan v. State* (1975) 166 Ind.App. 430, 336 N.E.2d 654, and in *Partlow v. State* (1922) 191 Ind. 660, 128

---

2. While we ultimately hold that this particular moral certainty instruction does not violate Jackson's due process rights, we, like the United States Supreme Court, do not encourage its use. Instead, we agree with Justice Ginsburg's endorsement of the Federal Judicial Center's proposed definition of reasonable doubt. For the complete text of that "clear, straightforward, and accurate" instruction, see *Victor/Sandoval,* —— U.S. at ——, 114 S.Ct. at 1253 (Ginsburg, J., concurring in part and concurring in the judgment).

N.E. 436, I would not approve that portion of the instruction which emphasizes "weaken[ing] the safeguards erected by society for its protection; for by the non-enforcement of the law and its penalties ... contempt for the law is bred among the very class that it is intended to restrain." Record at 42.

I agree with the majority that the giving of Instruction Nos. 1 and 9 were not inappropriate. Furthermore, I agree that the evidence was sufficient to support the conviction.

I must dissent, however, based upon the instruction which permitted the jury to return a not guilty verdict only if the doubt entertained as to guilt reached the level of moral certainty. Notwithstanding the *Victor/Sandoval* decisions, it should be noted that *Cage v. Louisiana* (1990) 498 U.S. 39, 111 S.Ct. 328 was decided only a few short years previously. The due process dangers there enunciated have not evaporated. In *Victor/Sandoval* the majority attempted to avoid the problem by stating that the two instructions being approved were placed in a definitional context which purified the "moral certainty" taint. Be that as it may, the instruction before us, as did the instruction in *Cage*, clearly joined the "moral certainty" to the matter of defendant's guilt. Advising the jury that doubt to a "moral certainty" should be determined only after a "full, fair, and impartial consideration of all of the evidence" (as in *Victor*), or "after the entire comparison and consideration of all of the evidence" (as in *Sandoval*), has absolutely no cleansing effect upon the pernicious aspect of the instruction. It quite simply implies to the jury that the prosecution's burden of proof has been lessened from proof beyond a reasonable doubt. As the law presently exists, and notwithstanding *Victor/Sandoval, Winegeart v. State* (1994) Ind.App., 644 N.E.2d 180, was correctly decided. For this reason, I would reverse and remand for a new trial.