**Carl M. TOBIAS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 72A05–9411–CR–463.

Court of Appeals of Indiana.

Dec. 29, 1995.

Robert M. Hammerle, Joseph M. Cleary, Hammerle, Foster, & Long–Sharp, Indianapolis, for appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

Carl M. Tobias appeals his conviction for Rape,[1] a class B felony, and Sexual Battery,[2] a class D felony.

We reverse.

The facts most favorable to the judgment are that on July 9, 1993, sixteen-year-old C.D. made arrangements with her boyfriend, Ralph, to go camping near Lake Hardy in Scott County. While at the campsite, C.D. and Ralph listened to music, drank beer, and engaged in sexual intercourse. Sometime during the early morning hours of July 10, several campers complained of noise coming from C.D.'s campsite. Tobias and Jamie Miller, who worked at the lake, began patrolling the camping area in a truck owned by the Department of Natural Resources.

Miller approached C.D.'s campsite and shined the truck's headlights on the tent. C.D. and Ralph emerged from the tent and Tobias informed them that a rape at the campsite had been reported. C.D. and Ralph denied that anything "bad" had occurred. *Record* at 165, 198, 245. Tobias announced that he needed to question C.D., so he led her to a heavily wooded area where C.D. again told him that she had not been raped. Tobias then placed his hands underneath C.D.'s shirt and touched her breasts, explaining that he needed to "check" and make sure that she had not been raped. *Record* at 246. Tobias then inserted his finger into C.D.'s vagina. C.D. became frightened and told Tobias to stop.

When the two returned to the campsite, Tobias announced that he was taking C.D. to the office so she could call her parents and ask permission to stay the night at the campsite. Tobias declined Ralph's request to go with them. When arriving at the office, Tobias placed his hand under C.D.'s shirt. C.D. told him to stop, but Tobias ordered her to remove her shorts. C.D. complied and Tobias proceeded to remove his pants. Tobias then had sexual intercourse with C.D., despite her protests to stop.

Tobias then drove C.D. back to the campsite and told her not to tell anyone. After Tobias left, C.D. became upset and told Ralph of the incident. C.D. and Ralph left the campsite and notified the police. C.D. was then taken to a hospital where a medical examination was performed. Dr. Mary Green detected three "finger tip like" bruises on C.D.'s right thigh and an abrasion on her lower right leg. *Record* at 490–91, 497–98. Tobias was arrested and DNA testing was conducted. The results indicated that semen found on C.D.'s underwear matched that of Tobias.

Following a jury trial which began on July 28, 1994, Tobias was found guilty of rape and sexual battery.

Tobias appeals, and in light of our disposition of this case, we need address only the following issue:

> Did the trial court err in instructing the jury as to the definition of reasonable doubt?

At trial, the jury was instructed as follows:

> "A reasonable doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upom [sic] imagination or speculation.

---

1. Ind.Code 35–42–4–1.

2. IC 35–42–4–8.

To prove the defendant's guilt of the elements of the crime charged beyond a reasonable doubt, the evidence must be such that it would convince you of the truth of it, to such a degree of certainty that you would feel safe to act upon such conviction, without hesitation, in a matter of the highest concern and importance to you.

A reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence. Since the burden is always upon the State to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon the failure of the State to establish such proof. A defendant may also rely upon evidence brought out on cross-examination of witnesses for the State.

The law never imposes upon a defendant in a criminal case the burden or duty of producing any evidence.

*A reasonable doubt exists in any case when, after careful and impartial consideration of all the evidence in the case, the jurors do not feel convinced to a moral certainty tha [sic] a defendant is guilty of the charge.*"

*Record* at 101 (emphasis supplied).

Tobias claims that the use of the words "moral certainty" in the instruction violated his right to due process, inasmuch as this language "could have allowed the jurors to convict [him] on something less than the degree of proof required by the Due Process Clause." *See* Appellant's Brief at 27.

We initially observe that Tobias did not object to the giving of the above instruction. While the State maintains that Tobias has waived appellate review of this issue, this court has determined that the giving of an instruction defining the term "reasonable doubt" which includes the phrase "moral certainty" denies a defendant his right to due process and constitutes fundamental error. *Winegeart v. State* (1994), Ind.App., 644 N.E.2d 180.

In *Winegeart,* an instruction containing the following language was submitted to the jury:

"A reasonable doubt is such doubt as you may have in your mind when having fairly considered all of the evidence, you do not feel satisfied to a *moral certainty* of the guilt of the defendant."

*Id.* at 183 (emphasis in original).

In reversing the defendant's conviction, this court observed that:

"We, however, believe the above-mentioned sentence was prominently placed within the instruction. We also believe the 'moral certainty' language may have indicated to the jurors that the beyond a reasonable doubt standard of proof was a matter of 'moral certainty,' rather than a matter of 'evidentiary certainty,' and, thus, may have allowed the jury, as the Supreme Court concluded in *Cage* [*v. Louisiana* (1990), 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339], to find the defendant guilty based upon a degree of proof below the 'beyond a reasonable doubt' standard as is required by the Due Process Clause. Conversely, depending upon an individual juror's subjective definition of 'moral certainty,' the language may have permitted a juror to impose a higher degree of proof upon the evidence presented than that required by an 'evidentiary certainty.'

In any case, we find this language carried with it the distinct potential of impermissibly relieving the State of its constitutionally-imposed burden of proof."

*Id.* at 183.

As in *Winegeart,* the reasonable doubt instruction failed to present an objective standard by which the jurors were to judge Tobias's guilt.

We are mindful that a panel of this court has rejected the reasoning of *Winegeart* in *Jackson v. State* (1995), Ind.App. 657 N.E.2d 131.[3] In *Jackson,* the jury was instructed as follows:

"The burden of proof is upon the State of Indiana to prove the Defendant guilty beyond a reasonable doubt.

A reasonable doubt is such doubt as you may have in your mind when having fairly considered all of the evidence, you do not

**3.** Chezem, J., Darden, J. (Sullivan, J., dissenting).

feel satisfied to a moral certainty of the guilt of the defendant. A reasonable doubt is a fair, actual and logical doubt that arises in the mind as an impartial consideration of all the evidence and the circumstances in the case. It is not every doubt, however, that is a reasonable one. You are not warranted in considering as reasonable those doubts that may be merely speculative or products of the imagination, and you may not act upon mere whim, guess or surmise or upon the mere possibility of guilt. A reasonable doubt arises, or exists in the mind, naturally, as a result of the evidence or the lack of evidence. Thee [sic] is nothing in this that is mysterious of [sic] fanciful. It does not contemplate absolute or mathematical certainty. Despite every precaution that may be taken to prevent it, there may be in all matters depending upon human testimony for proof, a mere possibility of error.

If, after considering all of the evidence, you have reached such a firm belief in the guilt of the defendant that you would feel safe to act upon that belief, without hesitation, in a matter of the highest concern and importance to you, then you have reached that degree of certainty which excludes reasonable doubt and authorizes conviction.

This rule on reasonable doubt applies to each of you individually, and it is your personal duty to refuse to convict as long as you have a reasonable doubt as to the defendant's guilt as charged. Likewise, it is your personal duty to vote for conviction as long as you are convinced beyond a reasonable doubt of the defendant's guilt as charged."

*Id.;* 657 N.E.2d at 136.

In determining that it was proper to give this instruction, the *Jackson* court relied on the consolidated cases of *Victor v. Nebraska* and *Sandoval v. California* (1994), —— U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 which recognized that certain instructions containing the phrase "moral certainty" will not be deemed unconstitutional when the jury is also informed that it must be convinced of the defendant's guilt "after a full, fair, and impartial consideration of all the evidence"

and that their decision "should be governed solely by the evidence introduced." *Id.* at ——, 114 S.Ct. at 1251. In considering the propriety of the instruction in *Jackson,* the majority opinion, written by Judge Chezem, observed as follows:

"Much like the instructions found to be constitutional in *Victor/Sandoval,* final instruction number 14 provides sufficient context to lend meaning to the phrase 'moral certainty.' 'Moral certainty' as a definition of reasonable doubt, does not stand alone in [the instruction], but is fleshed out—perhaps even more than in either *Victor* or *Sandoval.*" A reasonable doubt is correctly described as 'a fair, actual and logical doubt that arises in the mind' naturally, 'as a result of the evidence or the lack of evidence.' It is extinguished once a juror has 'reached such a firm belief in the guilt of the defendant' that the juror would feel safe to act upon that belief, without hesitation. As in *Victor/Sandoval,* the challenged instruction sufficiently directed the jury as to the required burden. Repeated references to the consideration of the evidence further emphasized the requirement of an evidentiary foundation. Accordingly, there was no reasonable likelihood that Jackson's jury applied [the] final instruction . . . in an improper or erroneous manner."

*Jackson,* 657 N.E.2d at 138.

Judge Sullivan dissented in *Jackson* and observed that *Victor* and *Sandoval* did not control the disposition of that case, inasmuch as the challenged instruction "clearly joined the 'moral certainty' to the matter of defendant's guilt." *Id.,* dissenting op. at 250. And so it is here. We cannot say that the "moral certainty" language does not stand alone or that the challenged instruction here "sufficiently directed the jury as to the required burden." *Id.* at 138. It does not contain language that the jurors' decision should be governed *solely* by the evidence introduced at trial. *See Victor/Sandoval, supra.*

We adhere to the reasoning espoused in *Winegeart* and find that *Victor* and *Sandoval* are not controlling in this case. The reasonable doubt instruction given at Tobias's trial

denied his right to due process and constituted fundamental error.

Reversed and remanded for a new trial.

ROBERTSON, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

The majority correctly quotes from my dissent in *Jackson v. State*, (1995) Ind.App., 657 N.E.2d 131, with regard to the instruction challenged there. In that opinion I did state that the instruction "clearly joined the 'moral certainty' to the matter of defendant's guilt." Slip op. at 7. However, I erred in that opinion by stating that the instruction tied "moral certainty" to the existence of reasonable doubt.

In actuality, the instructions in *Winegeart v. State* (1994) Ind.App., 644 N.E.2d 180, *Jackson, supra,* and here, relate "moral certainty" to the determination of guilt. A meritorious argument could be made, therefore, that the instruction, in fact, places a higher burden of proof upon the State than does a correct reasonable doubt instruction.

Nevertheless, what must be drawn from *Cage v. Louisiana* (1990) 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339, decided only a few short years before the *Victor/Sandoval* decision, and from *Winegeart, supra,* is that any use of the term "moral certainty" in a reasonable doubt instruction is likely to mislead the jury with regard to how they should assess the evidence and determine guilt. Such instructions are, therefore, to be strongly discouraged.