Steve WINEGEART, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

20504–9503–CR–344.

Supreme Court of Indiana.

May 24, 1996.

Brent Westerfeld, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Appellee.

ON PETITION TO TRANSFER

DICKSON, Justice.

How to instruct juries regarding reasonable doubt has long been a subject on which courts, individual judges, and lawyers have taken differing approaches. Today we seek not only to resolve conflicting opinions among different panels of the Court of Appeals but also to foster the improved wording of instructions so that we may achieve greater juror understanding and better application of the rudimentary principle of proof beyond a reasonable doubt.

Following a jury trial, defendant-appellant Steve Winegeart was convicted of the crime of burglary, a class B felony. Relying primarily on *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), the Court of Appeals reversed and remanded for a new trial, finding that the "moral certainty" language in the trial court's reasonable-doubt instruction may have permitted the jury "to find the defendant guilty based upon a degree of proof below the 'beyond a reasonable doubt' standard ... required by the Due Process Clause." *Winegeart v. State*, 644 N.E.2d 180, 183 (Ind.Ct.App.1994). In other Court of Appeals opinions reviewing identical or substantively identical "moral certainty" instructions, this holding has met alternatively with approval, *Tobias v. State*, 659 N.E.2d 246 (Ind.Ct.App.1995), and with disagreement, *Malone v. State*, 660 N.E.2d 619 (Ind. Ct.App.1996); *Jackson v. State*, 657 N.E.2d 131 (Ind.Ct.App.1995). To resolve this conflict, we grant the State's Petition to Transfer.

In his appeal from the conviction, the defendant contends that the trial court erred in instructing the jury regarding reasonable doubt and specific intent. Because the Court of Appeals granted relief on the defendant's claim as to his reasonable-doubt instruction, it did not address the second claim. We shall address each separately.

### Reasonable–Doubt Instruction

The defendant asserts that the following instruction, which used the words "actual," "fair," and "moral certainty," permitted the jury to find guilt based upon a degree of proof below that required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. After stating that the burden is upon the State to prove guilt beyond a reasonable doubt, the challenged instruction explained:

A reasonable doubt is such doubt as you may have in your mind when having fairly considered all of the evidence, you do not feel satisfied to a moral certainty of the guilt of the defendant. A reasonable doubt is a fair, actual and logical doubt that arises in the mind as an impartial consideration of all the evidence and the circumstances in the case. It is not every doubt, however, it is a reasonable one. You are not warranted in considering as reasonable those doubts that may be merely speculative or products of the imagination, and you may not act upon mere whim, guess or surmise or upon the mere possibility of guilt. A reasonable doubt arises, or exists in the mind, naturally, as a result of the evidence or the lack of evidence. There is nothing in this that is mysterious or fanciful. It does not contemplate absolute or mathematical certainty. Despite every precaution that may be taken to prevent it, there may be in all matters depending upon human testimony for proof, a mere possibility of error.

If, after considering all of the evidence, you have reached such a firm belief in the guilt of the defendant that you would feel safe to act upon that belief, without hesitation, in a matter of the highest concern and importance to you, then you have reached that degree of certainty which excludes reasonable doubt and authorizes conviction.

This rule on reasonable doubt applies to each of you individually, and it is your personal duty to refuse to convict as long as you have a reasonable doubt as to the defendant's guilt as charged. Likewise, it is your personal duty to vote for conviction as long as you are convinced beyond a reasonable doubt of the defendant's guilt as charged.

Record at 56–57.

The defendant did not make a timely objection to this instruction. Alleged er-

rors in the giving of instructions are not available on appeal unless proper specific objections are made at trial. Ind.Crim.Rule 8(B). However, a trial error may be deemed "fundamental" so as to avoid procedural default if it is a "substantial blatant violation of basic principles" that renders a trial unfair to a defendant. *Townsend v. State,* 632 N.E.2d 727, 730 (Ind.1994).

> In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. The element of harm is not shown by the fact that a defendant was ultimately convicted; rather, it depends upon whether his right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled.

*Id.* We have recently stated that, for a mistake to constitute fundamental error, "it must be so prejudicial to the rights of a defendant as to make a fair trial impossible." *Barany v. State,* 658 N.E.2d 60, 64 (Ind. 1995).

Winegeart contends that the giving of the reasonable-doubt instruction blatantly violated constitutional principles and deprived his jury trial of fairness. He asserts that in the reasonable-doubt instruction used in his jury trial, the words "actual" and "fair" expand the quantum of doubt needed to constitute "reasonable" doubt, and that the instruction refers to "moral certainty" instead of "evidentiary certainty," thus authorizing the jury to find guilt based on a degree of proof below that required by the Due Process Clause.

The Due Process Clause of the Fourteenth Amendment protects an accused "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). Because of the transcending interest a criminal defendant has in his liberty, the risk of an erroneous conviction necessitates that a substantial burden of proof be placed upon the prosecution. *See Speiser v. Randall,* 357 U.S. 513, 525–26, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460, 1472–73 (1958). The standard of proof beyond a reasonable doubt serves to impress upon the fact-finder "the need to reach a subjective state of near certitude of the guilt of the accused." *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560, 571 (1979). While the federal constitution requires that juries be instructed "on the necessity that the defendant's guilt be proven beyond a reasonable doubt," it does not require the use of "any particular form of words." *Victor v. Nebraska,* 511 U.S. 1, ——, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583, 590 (1994). However, the jury instructions, taken as a whole, must correctly express "the concept of reasonable doubt to the jury." *Id.*

In *Cage,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339, a reasonable-doubt instruction was determined to be constitutionally defective. In defining reasonable doubt, the instruction included language that equated reasonable doubt with "a grave uncertainty" and "an actual substantial doubt" and stated, "What is required is not an absolute or mathematical certainty, but a moral certainty." *Id.* at 40, 111 S.Ct. at 329, 112 L.Ed.2d at 342. The Court found that the words "substantial" and "grave" suggested a "higher degree of doubt than is required for acquittal under the reasonable-doubt standard," and that these statements, together with the reference to "moral certainty," rather than "evidentiary certainty," permitted a finding of guilt based upon a degree of proof below that required by the Due Process Clause. *Id.* at 41, 111 S.Ct. at 329–30, 112 L.Ed.2d at 342.

These principles were discussed and applied by the United States Supreme Court in the recent companion cases of *Victor v. Nebraska* and *Sandoval v. California,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), which approved reasonable-doubt instructions that included phrases such as "to a moral certainty," and "actual and substantial doubt." *See Victor,* 511 U.S. at ——, ——, ——, 114 S.Ct. at 1244, 1249, ——, 127 L.Ed.2d at 597, 600, ——. In both of the instructions approved in *Victor* and *Sandoval,* the moral certainty language appeared in very similar sentences, which stated that reasonable doubt occurs when, after "consideration of all the evidence," the juror does not

have "an abiding conviction, to a moral certainty" of the guilt of the accused. *Victor,* 511 U.S. at ——, ——, 114 S.Ct. at 1244, 1249, 127 L.Ed.2d at 592, 598. In this context, the Supreme Court explained that "the reference to moral certainty, in conjunction with the abiding conviction language," sufficiently emphasized "the need to reach a subjective state of near certitude of the guilt of the accused." *Id.* at ——, 114 S.Ct. at 1247, 127 L.Ed.2d at 596. The *Victor* court also distinguished its "moral certainty" instructions from the one in *Cage,* noting that "the problem in *Cage* was that the rest of the instruction provided insufficient context to lend meaning to the phrase." *Victor,* 511 U.S. at ——, 114 S.Ct. at 1250, 127 L.Ed.2d at 596. The Court noted, "Instructing the jurors that they must have an abiding conviction of the defendant's guilt does much to alleviate any concerns that the phrase moral certainty might be misunderstood in the abstract." Id. at ——, 114 S.Ct. at 1250, 127 L.Ed.2d at 600. Although clearly stating that the Justices "do not condone" and "do not countenance" the inclusion of the phrase moral certainty in a reasonable-doubt instruction, the Court found that in the context of the entire instruction, which explicitly directed the jurors to base their conclusion on the evidence of the case and not to engage in speculation or conjecture, the inclusion of the moral certainty language did not render the instruction unconstitutional. Id. at ——, ——, 114 S.Ct. at 1248, 1251, 127 L.Ed.2d at 597, 600. Similarly, while noting that equating reasonable doubt with substantial doubt is "somewhat problematic," the Court found that the context of the instruction, unlike that in *Cage,* contrasted substantial doubt with fanciful conjecture. Id. at ——, 114 S.Ct. at 1250, 127 L.Ed.2d at 599. It concluded that "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." Id. at ——, 114 S.Ct. at 1251, 127 L.Ed.2d at 601.

The challenged words and phrases in the reasonable-doubt instruction given to the *Winegeart* jury contain both significant differences from, and substantial similarities to, the instructions approved in *Victor.* The *Winegeart* instruction's reference to "moral certainty" lacks the "abiding conviction" language noted in *Victor.* On the other hand, the "actual and substantial doubt" wording in the Nebraska instruction in *Victor* is similar to the "fair, actual, and logical doubt" phrase used in Winegeart's trial. *Compare Victor,* 511 U.S. at ——, 114 S.Ct. at 1250, 127 L.Ed.2d at 599, *with Winegeart,* 644 N.E.2d at 181–82. Moreover, the *Winegeart* jury was directed to base its decision on all the evidence; to disregard whim, guess, surmise, or mere possibility of guilt; and to consider the "hesitate to act" benchmark—all factors that the *Victor* court found significant. *See id.* at ——, 114 S.Ct. at 1250–51, 127 L.Ed.2d at 599–600.

In the present case, the Court of Appeals rejected Winegeart's challenge to the use of the words "fair" and "actual" as used to explain reasonable doubt, but found constitutional error because the prominently placed, first substantive sentence of the definition in the instruction equated reasonable doubt with moral certainty, in violation of *Cage.* *Winegeart,* 644 N.E.2d at 183. Applying the methodology of appellate review set out in *Cage,* the Court of Appeals found that the use of the phrase "moral certainty" (rather than "evidentiary certainty") "may have allowed" the jury to define guilt based upon a degree of proof below that required by the Due Process Clause. *Id.*

■ In the time since *Cage,* however, the United States Supreme Court has revised and clarified the test for determining the constitutionality of a reasonable-doubt instruction. The proper constitutional inquiry "is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor,* 511 U.S. at ——, 114 S.Ct. at 1243, 127 L.Ed.2d at 591. *Accord Estelle v. McGuire,* 502 U.S. 62, 72–73, 112 S.Ct. 475, 482, 116 L.Ed.2d 385, 399 n. 4 (1991) (disapproving the standard of review employed in *Cage* ). Thus, unlike the Court in *Cage,* we must determine not whether the instruction "may have allowed" the jury to find guilt based upon a constitutionally deficient standard of proof, as did the Court of Appeals in this case, *Winegeart,* 644 N.E.2d at 183, but rather whether "there is a reasonable likelihood"

that the jury applied the instructions to convict based upon constitutionally insufficient proof of guilt. *Victor*, 511 U.S. at ——, 114 S.Ct. at 1243, 127 L.Ed.2d at 591. Our Court of Appeals found that the contested language "carried with it the distinct *potential* of impermissibly relieving the State of its constitutionally-imposed burden of proof." *Winegeart*, 644 N.E.2d at 183 (emphasis added). This evaluation, while appropriate under *Cage*, does not comply with the new standard articulated in *Victor* and *Estelle*.

■ As to Winegeart's constitutional challenge to the reasonable-doubt instruction given at his trial, we conclude that there is not a reasonable likelihood that the jurors who determined the defendant's guilt applied the instruction in a way that violated the Due Process Clause. Thus the giving of this instruction would not have constituted error even if a timely and proper objection would have been made at trial. When there is no error, *ipso facto*, there is no fundamental error. *Barany*, 658 N.E.2d at 64. However, we disapprove of the continued use of this instruction in the future.

The instruction uses 300 words in eleven sentences to explain reasonable doubt. This is not atypical for reasonable-doubt instructions, which often appear to be a conglomeration of phrases providing supplemental or alternative explication of reasonable doubt. Through the years, appellate decisions have held a wide variety of reasonable-doubt instructions to satisfy the minimal constitutional requirements. After a particular phrase has been thus tolerated by appellate courts, trial courts will often—usually in response to requests by counsel—incorporate such "approved" phrases into reasonable-doubt instructions. As a result, most reasonable-doubt instructions commonly in use in our courts today have not been crafted for the purpose of most effectively explaining the concept of reasonable doubt to jurors but rather are used primarily because the language therein is considered adequate to avoid appellate reversal.

As courts utilize such longer, more intricate explanations of reasonable doubt, juries are likely to draw an overall impression which may transcend the literal meaning of the substance of the words. Such lengthy and conceptually challenging instructions often present a drumbeat repetition, declaring that reasonable doubt is not every doubt, not whim, not guess, not surmise, not mere possibility, not fanciful, etc.; and that to qualify as reasonable doubt, such doubt must be fair, actual, logical, natural, etc. It is not surprising that jurors often have difficulty in synthesizing and comprehending reasonable doubt or that they may perceive that the instructing judge is minimizing the degree of doubt that will preclude a finding of guilt.

Although reluctant to find reversible error in instructions purporting to explain reasonable doubt, the United States Supreme Court has acknowledged: "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Miles v. United States*, 103 U.S. 304, 312, 26 L.Ed. 481, 484 (1881), *quoted in Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150, 167 (1954). The Seventh Circuit has declared:

"Reasonable doubt" must speak for itself. Jurors know what is "reasonable" and are quite familiar with the meaning of "doubt." Judges' and lawyers' attempts to inject other amorphous catch-phrases into the "reasonable doubt" standard, such as "matter of the highest importance" only muddy the water.... It is, therefore, inappropriate for judges to give an instruction defining "reasonable doubt," and it is equally inappropriate for trial counsel to provide their own definition.

*United States v. Glass*, 846 F.2d 386, 387 (7th Cir.1988). This view has found support in several other jurisdictions. *See United States v. Headspeth*, 852 F.2d 753, 755 (4th Cir.1988) (noting that "the term reasonable doubt has a 'self-evident meaning comprehensible to the lay juror,' which judicial efforts to define generally do more to obscure than to illuminate"); *United States v. Moss*, 756 F.2d 329, 333 (4th Cir.1985) (stating, "Recognizing that little can be gained from attempts to define reasonable doubt, while admitting that added confusion is often created by these well-intentioned judicial efforts, we join in the general condemnation of trial court attempts to define reasonable doubt in

their jury instructions"); *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir.1983), *cert. denied*, 466 U.S. 976, 104 S.Ct. 2355, 80 L.Ed.2d 828 (1984) (stating, "We share this generally disapproving view" of attempts to explain reasonable doubt); *Illinois v. Malmenato*, 14 Ill.2d 52, 150 N.E.2d 806, 811 (1958), *cert. denied*, 358 U.S. 899, 79 S.Ct. 222, 3 L.Ed.2d 148; (observing, "Reasonable doubt is a term which needs no elaboration and we have so frequently discussed the futility of attempting to define it that we might expect the practice to be discontinued"); *Kansas v. Larkin*, 209 Kan. 660, 498 P.2d 37, 39 (1972) (commenting that "it may well be questioned whether any definition is more illuminating than the phrase itself. The words are ordinary ones meant to be used in their popular or conventional sense and are understandable by a person of ordinary intelligence"); *Missouri v. Taylor*, 486 S.W.2d 239, 244 (Mo.1972) (noting, "It is difficult to explain simple terms like 'reasonable doubt' so as to make them plainer," and "Reasonable doubt is reasonable doubt, and that is about all that can be said in regard to it") (citations omitted).

Justice Ginsburg disagrees: "[E]ven if definitions of reasonable doubt are necessarily imperfect, the alternative—refusing to define the concept at all—is not obviously preferable." *Victor*, 511 U.S. at ——, 114 S.Ct. at 1253, 127 L.Ed.2d at 603 (Ginsburg, J., concurring in part and concurring in the judgment). Observing that "American courts have flirted with efforts to elaborate on the meaning of these familiar words," Chief Judge Newman of the Second Circuit Court of Appeals finds it "rather unsettling that we are using a formulation that we believe will become less clear the more we explain it." John O. Newman, *Beyond "Reasonable Doubt*,*"* 68 N.Y.U.L.Rev. 979, at 982, 984 (1993). However, he acknowledges that the explanatory reasonable-doubt instruction currently in use "is ambiguous and open to widely disparate interpretation by jurors." *Id.* at 985.

Professor Wigmore, noting that "various efforts have been made to define more in detail this elusive and undefinable state of mind," states:

Nevertheless, when anything more than a simple caution and a brief definition is given, the matter tends to become one of mere words, and the actual effect upon the jury, instead of being enlightenment, is likely to be rather confusion, or, at the least, a continued incomprehension. In practice, these detailed amplifications of the doctrine have usually degenerated into a mere tool for counsel who desire to entrap an unwary judge into forgetfulness of some obscure precedent, or to save a cause for a new trial by quibbling, on appeal, over the verbal propriety of a form of words uttered or declined to be uttered by the judge. The effort to perpetuate and develop these elaborate unserviceable definitions is a useless one, and serves today chiefly to aid the purposes of the tactition. It should be abandoned.

9 John H. Wigmore, *Evidence in Trials at Common Law* § 2497, at 405, 406–09 (James H. Chadbourn rev. 1981).

Several researchers have concluded that jurors' understanding of the concept of reasonable doubt may indeed be enhanced after hearing an instruction explaining the concept. *See* Laurence J. Severance and Elizabeth F. Loftus, *Improving the Ability of Jurors to Comprehend and Apply Criminal Jury Instructions*, 17 L. & Soc'y Rev. 153, 180 (1982); Laurence J. Severance et al., *Toward Criminal Jury Instructions that Jurors Can Understand*, 75 J.Crim.L. & Criminology 198, 206 (1984). Other studies, however, suggest that conventional pattern instructions attempting to explain the concept of reasonable doubt are ineffective. *See* Geoffrey P. Kramer & Dorean M. Koenig, *Do Jurors Understand Criminal Jury Instructions? Analyzing the Results of the Michigan Juror Comprehension Project*, 23 J.L.Reform 401, 414–16 (1990) (concluding that "the minimal and even negative effects of these instructions should raise serious concern about whether instructed jurors understand a crucial element of their charge—the meaning of reasonable doubt"); Norbert L. Kerr et. al., *Guilt Beyond a Reasonable Doubt: Effects of Concept Definition and Assigned Decision Rule on the Judgments of Mock Jurors*, 34 J.Personality & Soc.Psychol. 282, 285–86 (1976).

Some commentators maintain that, because the meaning of reasonable doubt is not self-evident to the lay juror, the federal Constitution requires courts to honor any defendant or jury requests for instructions defining reasonable doubt. *See* Henry A. Diamond, Note, *Reasonable Doubt: To Define, or Not to Define*, 90 Colum.L.Rev. 1716, 1736 (1990). One commentator asserts that "[m]ost people require considerable explanation, example, and parallel articulation to grasp the basic contours of [the concept of reasonable doubt]," and that a reasonable-doubt instruction, unadorned by explanation, "is an invitation to clothe it by invention, its flexibility an opportunity to bend it to prefigured purposes." H. Richard Uviller, *Acquitting the Guilty: Two Case Studies on Jury Misgivings and the Misunderstood Standard of Proof*, 2 Crim.L.F. 1, 38 (1990). One study reports that the responses of potential jurors asked what probability they associate with "reasonable doubt" range from 50 percent to 100 percent. Terry Connolly, *Decision Theory, Reasonable Doubt, and the Utility of Erroneous Acquittals*, 11 L. & Hum.Behav. 101, 102 (1987).

Substantial research by linguists, psychologists, and others suggests that many jurors have difficulty understanding jury instructions but much less difficulty understanding those that have been rewritten in light of psycholinguistic principles. *See* Peter M. Tiersma, *Reforming the Language of Jury Instructions*, 22 Hofstra L.Rev. 37, 42–52 (1993). Researchers have provided valuable suggestions on how to write more comprehensible jury instructions, including the illumination of jargon and modifying clauses and the use of simpler language. Summarizing the suggestions of psycholinguists, Professor Tanford provides ten guidelines for the improvement of instructions.

1. Eliminate nominalizations (making nouns out of verbs) and substitute verb forms; *e.g.,* changing "an *offer* of evidence" to "items *were offered* into evidence."

2. Replace the prepositional phrase "as to" with "about;" *e.g.,* changing "you must not speculate *as to* what the answer might have been" to "you must not speculate *about* what the answer might have been."

3. Relocate prepositional phrases so they do not interrupt a sentence; *e.g.,* avoiding sentences such as "proximate cause is a cause which, *in a natural and continuous sequence*, produces the injury."

4. Replace words that are difficult to understand with simple ones; *e.g.,* changing "agent's negligence is *imputed* to plaintiff" to "agent's negligence *transfers* to plaintiff."

5. Avoid multiple negatives in a sentence; *e.g.,* "innocent *mis* recollection is *not uncommon*."

6. Use the active rather than passive voice; *e.g.,* changing "no emphasis is intended by me" to "I do not intend to emphasize."

7. Avoid "whiz" deletions (omitting words "which is"); *e.g.,* by changing "statements of counsel" to "statements *which are* made by counsel."

8. Reduce long lists of words with similar meanings to only one or two; *e.g.,* shortening "knowledge, skill, experience, training, or education" to "training or experience."

9. Organize instructions into meaningful discourse structures that avoid connecting unrelated ideas in ways that make them seem related.

10. Avoid embedding subordinate clauses in sentences; *e.g.,* "you must not speculate *to be true* any insinuation *suggested by a question asked a witness*."

J. Alexander Tanford, *The Law and Psychology of Jury Instructions*, 69 Neb.L.Rev. 71, 81–82 (1990) (citations omitted).

We agree in principle with the Seventh and Fourth Circuits and those other jurisdictions that have concluded that the phrase "reasonable doubt" may suffice without further explication and that many attempts to provide effective additional explanation have fallen short. However, we are not convinced that the task is impossible in light of recent and ongoing research, and we thus prefer to endorse for use in Indiana courts a reasonable-doubt instruction that, to the maximum

extent possible, reflects the wisdom of the various available resources.

There is an inherent challenge in devising a comprehensible and succinct instruction explaining to lay jurors the concept of reasonable doubt. They must be informed that their determination of guilt depends upon the absence of reasonable doubt. The existence of reasonable doubt precludes a finding of guilt. Viewed in this way, the reasonable-doubt instruction is necessarily an attempt to define a negative concept. When court instructions proceed to define this concept by stating what it is *not*, the resulting double negative concept diminishes juror comprehension even further. In addition, we perceive that instructions containing repeated statements narrowing the class of doubts eligible for consideration as reasonable doubt may have a cumulative effect of minimizing the value and importance of this bedrock principle of criminal justice.

■ Although not utilized by the trial court in the present case, one attempt to suggest an improved reasonable-doubt instruction is found in Indiana Pattern Jury Instruction 1.15 [1]:

A reasonable doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all of the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.

To prove the defendant's guilt of the elements of the crime charged beyond a reasonable doubt, the evidence must be such that it would convince you of the truth of it, to such a degree of certainty that you would feel safe to act upon such conviction, without hesitation, in a matter of the highest concern and importance to you.

1 Indiana Pattern Jury Instructions—Criminal, instruct. 1.15 (2d ed. 1991). This instruction seeks to explain what reasonable doubt is and is not and then proceeds to equate "beyond a reasonable doubt" with the degree of probability a juror would require to act

unhesitatingly "in a manner of highest concern and importance to" himself or herself. Such attempts to quantify the degree of probability have received mixed reviews.

The "hesitate to act" analogy is discussed in *Victor*, 511 U.S. at ——, 114 S.Ct. at 1250, 1252, 1257, 127 L.Ed.2d at ——, ——, ——. The *Victor* majority comments that "the hesitate to act standard gives a common-sense benchmark for just how substantial such a doubt must be." *Victor*, 511 U.S. at ——, 114 S.Ct. at 1250, 127 L.Ed.2d at 599. In contrast, the "hesitate to act" language is criticized as problematic by Justices Ginsburg and Blackmun. Justice Blackmun, with Justice Souter concurring, states that such language "may in fact make matters worse by analogizing the decision whether to convict or acquit a defendant to the frequently high-risk personal decisions people must make in their daily lives." *Victor*, 511 U.S. at ——, 114 S.Ct. at 1257, 127 L.Ed.2d at 608 (Blackmun, J., concurring in part and dissenting in part). Justice Ginsburg expressly notes that "[a] committee of distinguished federal judges, reporting to the Judicial Conference of the United States, has criticized this 'hesitate to act' formulation." *Victor*, 511 U.S. at ——, 114 S.Ct. at 1252, 127 L.Ed.2d at 601 (Ginsburg, J., concurring in part and concurring in the judgment). The committee explained:

[T]he analogy it uses seems misplaced. In the decisions people make in the most important of their own affairs, resolution of conflicts about past events does not usually play a major role. Indeed, decisions we make in the most important affairs of our lives—choosing a spouse, a job, a place to live, and the like—generally, involve a very heavy element of uncertainty and risk-taking. They are wholly unlike the decisions jurors ought to make in criminal cases.

Federal Judicial Center, Pattern Criminal Jury Instructions 18–19 (1987) (commentary on instruction 21). We find such reasoning persuasive and believe that, while the "hesitate to act" language may bolster an otherwise marginal instruction against constitu-

**1.** The Indiana Pattern Jury Instructions are prepared under the auspices of the Indiana Judges Association and the Indiana Judicial Conference Criminal and Civil Instruction Committees. Although not formally approved for use, they are tacitly recognized by Indiana Trial Rule 51(E).

tional challenge, use of this analogy is neither required nor particularly desirable in explaining the concept of reasonable doubt.

In contrast to the Indiana Pattern Jury Instruction and other common instructions that attempt to define the negative concept of reasonable doubt, a proposal from the Federal Judicial Center focuses upon the positive concept of *proof beyond* a reasonable doubt. It defines that term, succinctly, as proof "that leaves you firmly convinced," and explains that reasonable doubt is a greater degree of doubt than merely "possible doubt." It explains that a juror's choice between guilty and not guilty should be equated to the distinction between "firmly convinced" of guilt versus "a real possibility" that the defendant is not guilty. The instruction states:

> [T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you [should] find [him/her] guilty. If on the other hand, you think there is a real possibility that [he/she] is not guilty, you [should] give [him/her] the benefit of the doubt and find [him/her] not guilty.

Federal Judicial Center, Pattern Criminal Jury Instructions 17–18 (1987) (instruction 21). The use of this instruction has received significant endorsement. *See Victor*, 511 U.S. at ——, 114 S.Ct. at 1253, 127 L.Ed.2d

at 603 (Ginsburg, J., concurring in part and concurring in the judgment) (stating, "This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly"); *Arizona v. Portillo* 182 Ariz. 592, 898 P.2d 970, 974, (1995) (finding this definition to be the one that "most fairly and accurately conveys the meaning of reasonable doubt," the "consistent use" of which "will assist jurors, be fair to both the state and defendants, and obviate the need for any future appeals on this issue," and ordering that it be given "in every future criminal case"); *Jackson*, 657 N.E.2d at 138 n. 2 (agreeing with Justice Ginsburg's endorsement).

In the exercise of our inherent and constitutional supervisory responsibilities, *see* Ind. Const. Art. VII, § 4, we seek to assure that juries in criminal cases are equipped with instructions that will allow them to understand and apply correctly the concept of reasonable doubt. Informed by numerous studies and recommendations from academic and judicial authorities, we acknowledge the shortcomings in Indiana Pattern Jury Instruction 1.15, in the instruction at Winegeart's trial, and in the various other reasonable-doubt explanations commonly in use. A substantial improvement in effective communication may be achieved by utilization of the Federal Judicial Center's proposed instruction. We therefore authorize and recommend (but, acknowledging that two of the five members of this Court find the present Indiana Pattern Jury Instruction preferable, do not mandate) that Indiana trial courts henceforth instruct regarding reasonable doubt by giving the above-quoted Federal Judicial Center instruction,[2] preferably with no supplementation or embellishment. We also request that this instruction be added to the next revision of the Indiana Pattern Jury Instructions—Criminal.

While the challenged instruction in the present case is less effective than we would prefer, it is not so deficient as to be constitu-

---

**2.** We believe that jurors will benefit from an instruction that refers to civil juries on which they may previously have served and the different standards of proof used in civil proceedings. Not only should this be helpful to jurors who

actually have such experience, but it will also help dispel inapplicable concepts that jurors may have obtained from national television or popular novels.

tionally defective. We therefore reject the defendant's contention of reversible error regarding the trial court's reasonable-doubt instruction.

### Specific–Intent Instruction

■ The second issue presented in the defendant's appeal is his assertion that Final Instruction 18[3] impermissibly relieved the State of its burden of proof on the issue of specific intent. The State responds that, because the ground on which the defendant objected to this instruction at trial was different than that now advanced on appeal, the allegation of error has been waived. It further responds that the instruction is substantially similar to some that have been likewise challenged in and upheld by Indiana appellate courts. *See Henderson v. State,* 544 N.E.2d 507, 509 (Ind.1989); *Blackburn v. State,* 519 N.E.2d 554, 557 (Ind.1988); *Warner v. State,* 577 N.E.2d 267, 271 (Ind.Ct. App.1991); *Beecher v. State,* 567 N.E.2d 861, 864 (Ind.Ct.App.1991).

At trial, the defendant objected to the giving of Instruction 18 not on the ground that he raises here but on the ground that it was covered by other instructions. Record at 240–41. Indiana Criminal Rule 8(b) provides that a party must state his specific objections to the trial court's instructions before the commencement of argument and that no claim of error is available on appeal except upon the specific objections properly made at trial. However, such procedural default will not preclude appellate review of issues of fundamental error. *Townsend v. State,* 632 N.E.2d 727 (Ind.1994). Because the defendant here claims that Instruction 18 was impermissible under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and its progeny, and because a *Sandstrom* violation is considered fundamental error, *see Walker v. State,* 632 N.E.2d 723, 724 (Ind.1994); *Reid v. State,* 529 N.E.2d 1309, 1309 (Ind.1988), procedural default will be precluded if such an error is found.

A jury instruction will be found to violate the Fourteenth Amendment where it is reasonably likely that the jury interpreted the instruction as shifting to the defendant a burden of persuasion on the intent element. *See Estelle,* 502 U.S. 62 at 72–73, 112 S.Ct. 475 at 482, 116 L.Ed.2d 385 at 399 n. 4; *Sandstrom,* 442 U.S. at 523–24, 99 S.Ct. at 2458–59, 61 L.Ed.2d at 50–51. However, in *Henderson,* 544 N.E.2d at 509, and *Jacks,* 394 N.E.2d at 175,[4] this Court rejected claims of *Sandstrom* violations regarding instructions that were substantially similar to Instruction 18 in the present case. *See also Blackburn,* 519 N.E.2d at 557. Following *Sandstrom,* the Supreme Court in *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), held that a reviewing court:

> must determine whether the challenged portion of the instruction creates a mandatory presumption, or merely a permissive

---

**3.** Final Instruction 18 provided:

> You are instructed that where a specific intent or kind of culpability is required to make an act an offense, such as in the charge preferred [sic] against the defendant, the State is not required to make proof of specific intent by direct evidence, since purpose and intent are subjective facts. That is, they exist within the mind of man, and since you cannot delve into a person's mind and determine his purpose and intent, you may look to all the surrounding circumstances, including what was said and done in relation thereto. The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the defendant with the degree of culpability charged in the information. You may, however, infer that every person intends the natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the ab-

sence of such intent. A determination of the defendant's intent may be arrived at by the jury from a consideration of the defendant's conduct and the natural and usual consequences to which such conduct logically and reasonably points.

> Where an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the State in the absence of justifying or excusing facts.

> Record at 54.

**4.** We note that the Court's reliance in *Jacks* upon the nature of the instruction as not "conclusive" was misplaced under *Sandstrom* and *Francis, see Sandstrom,* 442 U.S. at 523–24, 99 S.Ct. at 2458–59, 61 L.Ed.2d at 50–51; *Francis,* 471 U.S. at 316–17, 105 S.Ct. at 1972–73, 85 L.Ed.2d at 355. It is the *Jacks* court's alternate rationale for upholding the instructions—that they lack a "burden-shifting effect," *Jacks,* 394 N.E.2d at 175—that we are following here.

inference. A mandatory presumption instructs the jury that it must infer the presumed facts if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

Mandatory presumptions ... violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense. A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved.... A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.

*Francis,* 471 U.S. at 314–315, 105 S.Ct. at 1971, 85 L.Ed.2d at 353–54 (citations omitted) (footnote omitted). Furthermore, the *Francis* court explained, if the challenged portion of the instruction does not appear to pass constitutional muster, it "must be considered in the context of the charge as a whole," because it may be explained by other instructions sufficiently to avoid the creation of an unconstitutional presumption. *Id.* at 315, 105 S.Ct. at 1971, 85 L.Ed.2d at 354.

The instructions disapproved in *Francis* told jurors that " 'acts of a person of sound mind and discretion *are presumed* to be the product of the person's will' " and that a person " '*is presumed* to intend the natural and probable consequences of his acts,' " thereby mandating that the jurors make particular presumptions. *Id.* at 316, 105 S.Ct. at 1972, 85 L.Ed.2d at 354. In contrast, Instruction 18 talks in terms of what the jury "*may* look to," "*may* infer," and *may* consider in order to arrive at "a determination of the defendant's intent." Record at 54 (emphases added). These phrases describe permissive inferences, not mandatory presumptions. Moreover, we note that the permissive term "may" is used here three times. Overall, Instruction 18 did not mandate that the jury employ any particular

presumptions but merely permitted it to draw appropriate inferences from the evidence.

Considering the instruction as a whole, we conclude that there is no reasonable likelihood that the jury interpreted Instruction 18 as shifting to the defendant a burden of persuasion on the intent element of the charged offense. We find no error as to this issue.

### Conclusion

Transfer is granted and the opinion of the Court of Appeals is vacated pursuant to Indiana Appellate Rule 11(B)(3). The judgment of the trial court is affirmed.

SULLIVAN and SELBY, JJ., concur.

DeBRULER, J., concurs in result with separate opinion in which SHEPARD, C.J., concurs.

DeBRULER, Justice, concurring in result.

Appellant did not raise and preserve for appeal the issue of the allegedly erroneous jury instructions. This procedural default ordinarily renders appellate review unavailable. Ind.Crim.Rule 8(B); *Thomas v. State,* 264 Ind. 581, 348 N.E.2d 4, 7 (1976). *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), holds that a constitutionally defective reasonable doubt instruction is not subject to harmless error analysis. This holding does not obviate the requirement for timely and appropriate litigation of the issue of whether the instruction was actually defective. In this case, the trial court was not made aware of the potential error and, since the record does not reveal a blatant violation of basic and elementary principles, *Smith v. State,* 459 N.E.2d 355 (Ind.1984), consideration of the potential error is not now available, and I join in affirming the conviction and sentence.

In addition, I do not share the majority's perception of deep problems within this area, nor the belief that the Federal Judicial Center, Pattern Criminal Jury Instructions 17–18 are the appropriate remedy. Specifically, I do not believe that "firmly convinced" equates to "beyond a reasonable doubt." Both objectively and subjectively, "firmly

convinced" seems more similar to "clear and convincing" than to "beyond a reasonable doubt." I find the Indiana Pattern Jury Instruction, Op. at 901, more than adequate.

SHEPARD, C.J., concurs.