William C. BURRELL, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A01–9705–CR–162.

Court of Appeals of Indiana.

Oct. 26, 1998.

David D. Hayes, Terre Haute, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, K.C. Norwalk, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

### Case Summary

William Burrell appeals his conviction for child molesting, as a class A felony. We affirm.

### Issues

Burrell presents four issues for our review which we restate as follows:

I. Whether the trial court erred in admitting a photograph;

II. Whether the trial court erred in permitting a five-year-old to testify;

III. Whether the trial court erred in giving one "reasonable doubt" instruction over another; and,

IV. Whether Burrell's sentence was manifestly unreasonable.

### Facts and Procedural History

The facts most favorable to the conviction indicate that on August 13, 1996, Burrell was at the home of his sister ("Aunt Frannie")

watching his four-year-old daughter ("the victim"). No other adult was home until approximately 12:15 a.m. on August 14, 1996. At that time, Aunt Frannie returned and heard "water running in the shower and heard a whimpering." Record at 388. Upon investigation, Aunt Frannie found the victim crying in the shower with blood running down her legs. When asked by Aunt Frannie what had happened, the victim replied that the blood was from daddy and that she was bleeding from her "pee pee." Record at 389.

A half-hour later, the victim's mother arrived and she and Aunt Frannie took the victim to the hospital. The victim told a nurse that her daddy put his private part in her private part. Thereafter, a police technician took a photograph of the victim's bloody injury. An obstetrician gynecologist examined the sedated victim and found a fourth degree laceration between the victim's vagina and rectum. Emergency surgery was performed to restore the victim's anatomy.

A jury found Burrell guilty of child molesting.

### Discussion and Decision

#### I. Admission of Photograph

Burrell contends that the trial judge should not have admitted the photograph of the victim's injury. He asserts that it was gruesome, inflammatory, and unfairly prejudicial. He further asserts that the photograph was unnecessary in view of the doctor's testimony describing the injury, the pain related to it, and the long term effects.

Photographs depicting the victim's injuries or demonstrating a witness's testimony are generally relevant, and therefore admissible. To exclude photographs from evidence on relevancy grounds, the defendant must show that their improper influence on the jury would outweigh their probative value to the extent that they are unduly prejudicial. To exclude them from evidence because they are cumulative, the defendant must show that the probative value is substantially outweighed by the needless presentation of cumulative evidence. We review the trial court's ruling for an abuse of discretion. *Harrison v. State*, 699 N.E.2d 645, 647–48 (Ind. 1998) (citations omitted).

The photograph at issue corroborated the testimony of the police technician who originally took the picture. He stated that the photograph was a true and accurate representation of how the victim's injury looked at the time he photographed her. That same photograph was used later during the testimony of the obstetrician gynecologist who performed the surgery on the victim. He explained the nature and extent of the victim's injury and used a pointer with the photograph to illustrate his testimony. He also testified that the injury to the victim looked exactly as it did in the picture. Thus, the photograph was probative of the details and severity of the injury.

Undoubtedly, the photograph at issue is horrific. However, a father committing such actions against his four-year-old daughter is horrific in and of itself. We cannot say that the admission of a photograph depicting the serious injury resulting from such a crime heightened the reaction felt by jurors regarding this case. To the extent that the photograph is cumulative, it is only marginally so. Under these circumstances, any prejudice from the photograph was outweighed by its probative value, and the trial court did not abuse its discretion in admitting it. *See Amburgey v. State*, 696 N.E.2d 44, 45 (Ind. 1998) ("Even gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally.").

#### II. Child Victim's Competency

Burrell next contends that the trial court should not have allowed the victim, who was five-years-old at the time of trial, to testify. He argues that the State failed to show that the victim was under compulsion to tell the truth. Thus, the victim was incompetent to testify.

A determination as to a witness's competency lies within the sound discretion of the trial court and is reviewable only for a manifest abuse of that discretion. *Thornton*

*v. State,* 653 N.E.2d 493, 497 (Ind.Ct.App. 1995). Although Indiana Code Section 34–1–14–5 formerly presumed incompetency of children "under ten (10) years of age, unless it appears that they understand the nature and obligation of an oath," that subsection was repealed in 1990. In January of 1994, the following rule became effective: "Every person is competent to be a witness except as otherwise provided in these rules or by act of the Indiana General Assembly." Ind. Evidence Rule 601.

Rule 601's failure to presumptively exclude children does not prohibit special inquiry into their competency prior to testifying when the issue is raised by a defendant. Rather, Rule 601, read in conjunction with the repeal of the subdivision regarding children in the witness competency statute, abandoned the previous arbitrary lines drawn regarding age, in favor of a rule which assumes competency until otherwise demonstrated by the opponent of the testimony. *See Newsome v. State,* 686 N.E.2d 868, 877–78 (Ind.Ct.App. 1997) (Hoffman, J., concurring in result).

During the competency hearing, the victim was questioned as follows:

Q   [by the prosecutor]: I think I have on a blue jacket. Do I have on a blue jacket?

A:   Pink.

Q:   Kind of pinkish red, is it, but is it blue?

A:   Huh uh.

Q:   No, it is definitely not blue, is it. [Victim], if I said that I have a blue jacket on, would that be the truth, you have to answer, can you say?

A:   A lie.

* * *

Q   [by the prosecutor]: [I]s it a good thing to tell the truth, you have to answer, can you answer?

A:   Yeah.

Q:   Yeah. What happens if you tell the truth?

A:   You can stay up late and watch cartoons.

Q:   You can stay up late and watch cartoons.

A:   Uh huh.

Q:   What happens if you tell a lie?

A:   You cannot ever watch cartoons.

* * *

Q   [by Burrell's counsel]: [H]ave you ever told a lie because you thought somebody wanted you to tell that story?

A:   Huh uh.

Q:   And, that's no, right, you are shaking your head no.

A:   Yes.

Q:   Okay. Do you understand that when you are sitting in that chair, that's a special chair, all right, okay, do you know it is a special chair?

A:   Uh huh.

Q:   All right, and when you are sitting in that chair, you have to tell the truth, did you know that? Okay, that's a yes, you are shaking your head yes.

A:   Yes.

Q:   Do you understand that when people ask you questions and you are sitting in that chair, you have to tell the truth, shaking your head yes, you are not going to talk to me.

A:   Uh huh.

Q:   Can you talk to me and say yes?

A:   Yes.

Record at 358, 359, 363–64.

The above discussion revealed that the victim understood a distinction between truth and falsehood. The victim was able to articulate an unpleasant consequence for telling a lie and a pleasant consequence for telling the truth. Applying the abuse of discretion standard, we conclude that Burrell did not establish the victim's incompetency. Therefore, the trial court's decision to allow the victim to testify was proper.

### III.   *"Reasonable Doubt" Instruction*

■   Burrell argues that the trial judge should have read the "reasonable doubt" instruction tendered by him rather than the instruction which follows:

The government has the burden of proving the defendant guilty beyond a reasonable

doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you should find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you should give him the benefit of the doubt and find him not guilty.

Record at 486–88.

█ The manner of instructing the jury lies largely within the sound discretion of the trial court, and we review the trial court's decision only for an abuse of that discretion. *Edgecomb v. State,* 673 N.E.2d 1185, 1196 (Ind.1996). The above jury instruction was taken verbatim from the current Indiana Pattern Jury Instructions. *See* INDIANA PATTERN JURY INSTRUCTIONS-*CRIMINAL* (2d ed.1991 & supp.1997), No. 1.15. Moreover, our supreme court recently expressly authorized and recommended the use of that same instruction. *Winegeart v. State,* 665 N.E.2d 893, 902 (Ind.1996). We do not believe the trial court abused its discretion by following the recommendation of our supreme court. *See Higgins v. State,* 690 N.E.2d 311, 313 (Ind.Ct.App.1997).

## IV. Sentence

█ Finally, Burrell asserts that his fifty-year sentence was manifestly unreasonable due to the following aggravator:

as an additional factor, rather than attempt to minimize the trauma upon his daughter, the defendant required his daughter to come into the courtroom and testify as to what occurred to her. Rather than admit his own guilt, the defendant required that the victim come into court and endure the kind of trauma that a child of her age must feel to testify in a courtroom full of people, in order to require the State to prove him guilty beyond a reasonable doubt.

Record at 138.

█ "A court may enhance a presumptive sentence based upon a single aggravating circumstance." *Smith v. State,* 675 N.E.2d 693, 697 (Ind.1996). An enhanced sentence can be imposed when the only aggravating circumstance is a prior criminal history. *Duvall v. State,* 540 N.E.2d 34, 36 (Ind.1989). Despite a trial court's use of an improper aggravating circumstance to enhance a sentence, this Court will affirm if the other aggravating circumstances are adequate to support the sentence imposed. *Robinson v. State,* 693 N.E.2d 548, 554 (Ind. 1998).

In addition to the challenged aggravator, the trial judge included the following aggravators in the sentencing order:

2. [Burrell, age twenty-three at the time of sentencing] has an extensive criminal history both as a minor and as an adult, which include convictions in both Clay and Vigo County. Two arrests for Auto Theft, one of which was reduced to conversion. Defendant has numerous alcohol related offenses including public intoxication, minor consuming, and operating a vehicle while intoxicated. Defendant has convictions for criminal conversion, resisting law enforcement, criminal mischief and operating a vehicle while suspended; charges of intimidation with a deadly weapon, battery with a deadly weapon, and battery causing bodily injury were dismissed as part of a plea agreement.

\* \* \*

3. That [Burrell] was on probation at the time of the commission of this crime.

\* \* \*

2. That there are additional aggravating factors not specifically enumerated in the statutes. The first is that throughout the course of these proceedings, which the court believes as a trier of fact to have

been proved by overwhelming evidence, there was no remorse or concern expressed by this defendant about the welfare of his daughter, the victim herein. Even after the commission of the crime, she was left bleeding and by herself in the bathtub, while defendant calmly watched television.

Record at 137–38. In view of these other proper aggravators which Burrell does not challenge, we conclude Burrell's sentence was not manifestly unreasonable.

Affirmed.

RILEY and RUCKER, JJ., concur.