**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 09 2012, 10:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT,
Anthony W. Smith:

**JEREMY K. NIX**
Matheny Hahn Denman & Nix, LLP
Huntington, Indiana

ATTORNEY FOR APPELLANT,
Bobby J. McDaniel:

**MATTHEW G. GRANTHAM**
Bowers Brewer Garrett & Wiley, LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY W. SMITH, | ) | |
| BOBBY J. MCDANIEL, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 35A04-1112-CR-662 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas M. Hakes, Judge
Cause No. 35C01-1012-FB-309

**August 9, 2012**

**BARNES, Judge**

## Case Summary

Anthony Smith and Bobby McDaniel appeal their attempted murder convictions and sentences. We affirm.

## Issues

Anthony and McDaniel raise several issues, which we restate as:

I.  whether the jury was properly instructed;

II.  whether there is sufficient evidence to sustain Anthony's conviction;

III.  whether Anthony's sentence is inappropriate; and

IV.  whether the trial court properly determined that McDaniel's sentence could not be further suspended.

## Facts

In 2010, Misty Sell was living with David Smith.[1] In November 2010, she broke up with David and began dating Anthony. In December 2010, she stopped dating Anthony and moved back in with David. When Sell broke up with Anthony, he threatened to kill Sell, David, and himself. Less than a week later, on December 17, 2010, Sell retrieved some of her belongs from Anthony, and Sell told Anthony that she did not want to get back together with him. She returned to David's apartment, and they went to sleep.

---

[1] Anthony Smith and and David Smith are not related.

In the early morning hours of December 18, 2010, Anthony left his house with a steak knife in the waistband of his pants, and McDaniel, Anthony's stepson, followed Anthony. Sell and David awoke to someone beating on the front door. As David put on his pants, Sell opened the door to Anthony and McDaniel. They pushed Sell out of the way and went into the apartment. David backed into a corner and asked what they were doing there. Anthony said, "shut up you f****** faggot I'm going to kill you." Tr. p. 494. Anthony and David fought until Sell started to call the police, and then Anthony went toward the door. At that point, McDaniel and David began fighting. Anthony went toward David, but Sell yelled at him and shoved him out of the apartment.

Sell saw Anthony and McDaniel each stab David on his left side. David was stabbed a total of three times and suffered a lacerated spleen and diaphragm, which required surgery to suture. Two knives were recovered from the scene.

The State initially charged Anthony and McDaniel with Class B felony aggravated battery. The informations were amended to include charges of Class A felony attempted murder and Class C felony battery, and the aggravated battery charges were dismissed. Anthony and McDaniel were jointly tried, and a jury found them guilty as charged. At sentencing, the trial court vacated the battery convictions. For the attempted murder convictions, Anthony was sentenced to forty-five years, with ten years suspended to probation, for an executed sentence of thirty-five years, and McDaniel was sentenced to thirty-five years, with fifteen years suspended to probation, for an executed sentence of twenty years. Anthony and McDaniel now appeal in a consolidated appeal.

3

## Analysis

### *I. Jury Instructions*

Anthony and McDaniel argue that the jury was improperly instructed regarding intent. A trial court's decision on how to instruct a jury is reviewed for abuse of discretion. Treadway v. State, 924 N.E.2d 621, 636 (Ind. 2010). When evaluating the jury instructions on appeal, we look to whether the tendered instructions correctly state the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions. Id. We will reverse a conviction only if the appellant demonstrates that the instruction error prejudices his or her substantial rights. Id.

McDaniel and Anthony both argue that the manner in which the jury was instructed relieved the State of having to prove the intent element of attempted murder by allowing the jury to infer that they acted with the specific intent to kill David. Anthony's argument is based primarily on Court's Final Instruction No. 6, which provides, "Intent to kill can be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm." Anthony's App. p. 137. Anthony also asserts that certain language in Court's Final Instruction No. 8 amplified the language in Court's Final Instruction No. 6. Court's Final Instruction No. 8 provides in part, "[y]ou may, however, infer that every person intends the natural and probable consequences of his voluntary acts unless the circumstances are such to indicate the absence of such intent." Id. at 139.

Anthony relies on McDowell v. State, 885 N.E.2d 1260 (Ind. 2008), in which McDowell stabbed the victim in the neck during an argument. The stab wound resulted

4

in a one-inch cut, and the damage was repaired during surgery. It appeared the victim would fully recover; however, a blood clot in an artery broke loose and caused blood to enter his lungs, and he died of asphyxiation due to blood in his lungs six days after being stabbed. McDowell was charged with and convicted of Class A felony voluntary manslaughter. During her trial, the jury was instructed, "[t]he intent to kill may be inferred from evidence that a mortal wound was inflicted upon an unarmed person with a deadly weapon in the hands of the accused." McDowell, 885 N.E.2d at 1262.

In reversing McDowell's voluntary manslaughter conviction based on an instructional error, our supreme court distinguished this instruction from other cases in which no instructional error was found. Id. at 1263. The McDowell court explained:

> In Bethel, this Court found no error in the giving of an instruction permitting the jury to infer intent to commit murder from the use of a deadly weapon in a manner likely to cause death or great bodily injury. 730 N.E.2d at 1246. The challenged instruction approved in Brown was somewhat similar: "You are instructed that intent and purpose to kill may be inferred from the deliberate use of a deadly weapon in a manner calculated to produce death." 691 N.E.2d 438, 444 (Ind. 1998). But unlike the present case, the instructions in both Bethel and Brown, by including such words and phrases as "in a manner likely," "deliberate," and "in a manner calculated," employed language specifically relating to the actor's state of mind and referring to evidentiary facts relevant to inferring criminal intent.

Id. (quoting Bethel v. state, 730 N.E.2d 1242 (Ind. 2000); Brown v. State, 691 N.E.2d 438 (Ind. 1998)). The McDowell court concluded:

> The challenged instruction operated to relieve the State's burden to prove the requisite intent element: that the defendant knowingly or intentionally killed a person. It misled the jury by authorizing a conviction for this offense

5

> merely upon evidence that [the victim's] death resulted from a deadly weapon "in the hands of the defendant."

Id. at 1264.

Anthony argues that, as in McDowell, his intent, not his action, was at issue. According to Anthony, the fact that he used a kitchen knife to inflict a single stab wound did not support an inference that the natural and probable consequence of his act was to kill David, who suffered a relatively minor wound.

We believe that Anthony's reliance on McDowell is misplaced. Aside from the factual distinctions between this case and McDowell, Court's Final Instruction No. 6 is not the same as the McDowell instruction. In fact, Court's Final Instruction No. 6 is in line with the Bethel and Brown instructions in that it refers to the use of a deadly weapon "in a manner likely to cause death or great bodily harm." Anthony's App. p. 137. This language relates to the actor's state of mind and refers to the facts relevant to inferring criminal intent. See McDowell, 885 N.E.2d at 1263. Unlike McDowell, the instruction did not authorize a conviction merely for Anthony's use of a deadly weapon, and Anthony's attempts to distinguish the facts of Bethel and Brown are unavailing. Thus, Anthony has not established that the trial court abused its discretion by tendering Court's Instruction No. 6 to the jury.

McDaniel's argument that the State was relieved of its burden of proving intent is based on Court's Final Instruction No. 8, which provides:

> Where a certain kind of culpability is required to make an act an offense, such as in the charges filed against the defendants, it is not always possible to prove an intent by direct evidence, for purposes and intent are subjective facts.

6

That is, they exist within the mind of a man, and since you cannot delve into a person's mind and determine his purpose and intent, you may look to all the surrounding circumstances, including what was said and done in relation thereto. You may, however, infer that every person intends the natural and probable consequences of his voluntary acts unless the circumstances are such to indicate the absence of such intent.

Anthony's App. p. 139.

In Winegeart v. State, 665 N.E.2d 893 (Ind. 1996), our supreme court reviewed a similar instruction for fundamental error. In affirming the conviction, the court explained:

Instruction 18 talks in terms of what the jury "may look to," "may infer," and may consider in order to arrive at "a determination of the defendant's intent." These phrases describe permissive inferences, not mandatory presumptions. Moreover, we note that the permissive term "may" is used here three times. Overall, Instruction 18 did not mandate that the jury employ any particular presumptions but merely permitted it to draw appropriate inferences from the evidence.

Winegeart, 665 N.E.2d at 904. The court concluded that, when considering the instruction as a whole, there was no reasonable likelihood that the jury interpreted the instruction as shifting to the defendant the burden of persuasion of the intent element. Id. The court found no error as to this issue. Id.

In an attempt to distinguish Winegeart, McDaniel argues that, because he objected and preserved the issue, he does not have to establish fundamental error and only needs to show that this instruction misstated the law or had the potential to mislead the jury. McDaniel does not dispute that this instruction is a correct statement of the law and argues only that the instruction was misleading because it does not describe an alternative

7

to finding the defendant guilty.  He asserts the instruction should have clarified that there are other permissible inferences the jury could make or explicitly provided that the jury could elect to make no inference at all.

Even if the Winegeart holding is not applicable,[2] nothing about the language of Court's Final Instruction No. 8 is particularly confusing or complicated so as mislead the jury.  It did not require the jury to find McDaniel guilty if certain facts were proven.  McDaniel has not established that the trial court abused its discretion in tendering Court's Final Instruction No. 8 to the jury.

## II.  Sufficiency of the Evidence

Anthony argues that there is insufficient evidence of his intent to kill David.  The standard of review for claims of insufficient evidence is well settled.  We do not reweigh the evidence or judge the credibility of the witnesses, and we respect the jury's exclusive province to weigh conflicting evidence.  Jackson v. State, 925 N.E.2d 369, 375 (Ind. 2010).  We consider only the probative evidence and reasonable inferences supporting the verdict and affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.  Id.

Anthony contends that the evidence of his intent to kill David is insufficient because David did not realize he had been stabbed until police told him to calm down and

---

[2]  The Winegeart court found "no error as to this issue."  Winegeart, 665 N.E.2d at 904.  This seems to mean it found no error, let alone fundamental error, regarding this instruction.

8

because immediately after Anthony attacked David he retreated toward the door. Anthony also points out that David's injuries were not life threatening.

This is nothing more than a request to reweigh the evidence. There was evidence that a few days before the incident, Anthony had threatened to kill David. On the night of the incident, shortly after Sell declined to reconcile with Anthony, Anthony armed himself with a knife, left his house, and went to David's house. When Sell opened the door, Anthony pushed his way into the apartment, backed David into a corner, told David he was going to kill him, and stabbed David on his side. Although Anthony initially went to the door when Sell called the police, Anthony moved toward David when McDaniel and David began fighting and only left the apartment when Sell pushed him out. From this evidence, the jury could infer that Anthony was acting with the specific intent to kill David. There is sufficient evidence to sustain Anthony's attempted murder conviction.

### III. Anthony's Sentence

Anthony argues that his aggregate sentence of forty-five years is inappropriate. Indiana Appellate Rule 7(B) permits us to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant

9

bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Referring to the nature of the offense, Anthony argues that he was upset about his breakup with Sell and had been drinking when he went to confront Sell and David. Anthony contends that he only stabbed David once and that David's injuries were not life threatening. We are not persuaded by this argument. A few days before the incident, Anthony threatened to kill Sell, David, and himself. Then, after a night of drinking, Anthony armed himself with a knife and went to David's apartment with McDaniel. Anthony entered David's apartment, backed him into a corner, and stabbed him. Although Anthony initially started to leave when Sell called the police, he went toward

10

David again when McDaniel and David began to fight. Although David did not suffer life threatening injuries, he had to undergo surgery for his injuries.

Anthony also argues that his character does not justify his sentence. Anthony, however, has had regular contact with the criminal justice system since 1983. He has juvenile delinquency adjudications and has been convicted of burglary, three counts of invasion of privacy, two counts of resisting law enforcement, two counts of battery, leaving the scene of an accident, criminal mischief, disorderly conduct, and harassment. Anthony reported using marijuana on the night of the incident and admitted to using methadone, speed, LSD, and inhalants in the past. Based on the nature of the offense and the character of the offender, we cannot conclude that Anthony's forty-five year sentence, ten years of which are suspended, is inappropriate.

### IV. McDaniel's Sentence

McDaniel argues that the trial court erroneously concluded that attempted murder is a non-suspendible offense pursuant to Indiana Code Section 35-50-2-2, which refers to murder but not attempted murder. McDaniel acknowledges our supreme court's holding that "when Ind. Code § 35-50-2-2 speaks of Murder, it also refers to Attempted Murder." Haggenjos v. State, 441 N.E.2d 430, 434 (Ind. 1982). As McDaniel also acknowledges, we are bound by the decisions of our supreme court. See Dragon v. State, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002) ("Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment."), trans. denied. We may not revisit this issue.

11

## Conclusion

Anthony and McDaniel have not established that the trial court abused its discretion in instructing the jury. There is sufficient evidence to support Anthony's conviction, and he has not established that his sentence is inappropriate. McDaniel has not established that his sentence should be further suspended. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.